OPINION
{¶ 1} Appellant/Cross-Appellee Federal Insurance Company ("Federal") appeals the decision of the Tuscarawas County Court of Common Pleas that found coverage, for Appellees/Cross-Appellants ("Appellees") John McDonald and his Estate, under a business auto policy and umbrella policy issued to Greer Industries, Inc. ("Greer"), the employer of the decedent's father, Vernon McDonald. The following facts give rise to this appeal.
 {¶ 2} The accident resulting in this lawsuit occurred on March 11, 1998, when John McDonald was killed while riding as a passenger in a vehicle operated by James Warner, Jr. The Estate of John McDonald settled with the tortfeasor's liability insurer for the liability limit of $25,000. In addition, the estate also received $75,000 in UIM benefits from State Farm, the personal auto insurer for Vernon McDonald.
 {¶ 3} Following receipt of these proceeds, appellees made UIM claims, for additional UIM benefits, from Cincinnati Insurance Company ("Cincinnati"), Federal and Indiana Insurance Company ("Indiana"). Appellees requested arbitration of their claims. The basis for theseScott-Pontzer[1]claims are as follows. First, appellees presented a UIM claim under a business auto policy and an umbrella policy Cincinnati issued to the decedent's employer, Hicks Roofing, Inc. The auto policy provides express UM/UIM coverage in the limit amount of $1 million. The umbrella policy provides UIM coverage in the limit amount of $4 million, by operation of law, because Cincinnati did not have a valid and enforceable written offer and rejection or reduction of UIM coverage.
 {¶ 4} Second, appellees presented a UIM claim against Vernon McDonald's employer, Greer, under a business auto policy and an umbrella policy issued by Federal. The auto policy provides $1 million in express UM/UIM coverage. The umbrella policy provides $20 million in UIM coverage, by operation of law, because Federal did not have a valid and enforceable written offer and rejection or reduction of UIM coverage.
 {¶ 5} Third, Appellee Lori Scott, the decedent's sister, who did not live with the decedent and their parents, presented a UIM claim under a business auto policy Indiana issued to Scott's employer, Courthouse Café Properties, Ltd. Indiana's auto policy provides express UM/UIM coverage in the limit amount of $1 million.
 {¶ 6} Pursuant to appellees' request, this matter proceeded to arbitration. On September 19, 2001, a unanimous arbitration panel determined the total damages for the wrongful death of John McDonald was $1,800,000 and that the decedent was guilty of fifteen percent comparative negligence. Thus, the panel of arbitrators reduced the award, by fifteen percent, to $1,530,000. The arbitration panel distributed the proceeds as follows: $680,000 to decedent's father, Vernon McDonald; $680,000 to decedent's mother, Marla McDonald; $85,000 to decedent's sister, Lori Scott; and $85,000 to decedent's sister, Holly Lehigh.
 {¶ 7} Thereafter, the trial court reduced the arbitration award, by $100,000, in order to set off the $25,000 received from the tortfeasor's insurer and $75,000 received from the decedent's personal insurer. On December 3, 2001, Indiana filed a complaint, in the Stark County Court of Common Pleas, seeking a declaratory judgment against Farmers, Federal, Cincinnati, Appellee Vernon McDonald, Individually and as Administrator of the Estate of John McDonald and Lori Scott. Indiana sought a declaration that its policy, issued to Lori Scott's employer, provided only excess coverage for Appellee Scott's wrongful death damages caused by her brother's death. Indiana claimed the other insurance policies issued by Cincinnati, Federal and Farmers Insurance of Columbus, Inc. ("Farmers")[2] provided primary coverage to any coverage provided by Indiana.
 {¶ 8} On December 17, 2001, in the lawsuit filed by Indiana, appellees moved to confirm the arbitration award and reduce the award to judgment against Federal, Indiana and Cincinnati. Appellees also filed a motion for prejudgment interest. On January 11, 2002, Indiana moved for summary judgment against Cincinnati and Federal claiming Cincinnati and Federal provided primary coverage to the decedent and his estate. Indiana argued its insured, Appellee Scott, would be fully compensated by virtue of a distribution of her share of the wrongful death proceeds as a beneficiary of her brother's estate, for which Cincinnati and Federal provided primary coverage. Thus, Indiana maintained that it owed no UIM benefits to Appellee Scott.
 {¶ 9} On January 16, 2002, Farmers moved to transfer venue to Tuscarawas County. On January 18, 2002, Federal filed a brief in opposition to the motion to reduce the arbitration award to judgment and opposed appellees' motion for prejudgment interest. Federal also filed a cross-motion for summary judgment on the issue of coverage under its two policies issued to Greer. On January 31, 2002, Cincinnati filed an amended answer and cross-claim, against Federal, claiming that Federal afforded coverage on a pro rata basis with Cincinnati.
 {¶ 10} Subsequently, on March 19, 2002, the Stark County Court of Common Pleas transferred this matter to the Tuscarawas County Court of Common Pleas. On October 16, 2002, the trial court granted appellees' motion for summary judgment against Federal and denied Federal's cross-motion for summary judgment. The trial court concluded Federal owed coverage, to John McDonald and his estate, under its policies issued to Greer. The trial court also awarded prejudgment interest from the date of the arbitrators' award.
 {¶ 11} Federal timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 12} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DENIED THE CROSS-MOTION FOR SUMMARY JUDGMENT OF FEDERAL INSURANCE COMPANY BY DISREGARDING THE DRIVE OTHER CAR BROADENED COVERAGE ENDORSEMENT IN FEDERAL'S BUSINESS AUTO POLICY WHICH, BECAUSE IT CLEARLY AND UNAMBIGUOUSLY EXTENDS UM/UIM COVERAGE TO IDENTIFIED INDIVIDUALS, DISTINGUISHES THIS CASE FROM SCOTT-PONTZER V. LIBERTY MUT. INS. CO., 85 OHIO St.3d 660, 1999-OHIO-292.
 {¶ 13} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT ENTERED SUMMARY JUDGMENT AGAINST FEDERAL INSURANCE COMPANY IN CONCLUDING THAT THE DECEDENT, JOHN L. MCDONALD, WAS AN INSURED UNDER THE FEDERAL BUSINESS AUTO AND COMMERCIAL UMBRELLA POLICIES AS A `FAMILY MEMBER' OF AN EMPLOYEE OF THE CORPORATE NAMED INSURED AND, THEREFORE, THAT UM/UIM COVERAGE WAS AVAILABLE UNDER FEDERAL'S POLICIES FOR HIS WRONGFUL DEATH.
 {¶ 14} "III. THE TRIAL COURT'S FACTUAL FINDING THAT FEDERAL INSURANCE COMPANY'S PARTICIPATION IN THE ARBITRATION PROCEEDING WAS WITHOUT A RESERVATION BY FEDERAL OF ITS RIGHT TO LITIGATE COVERAGE DEFENSES UNDER FEDERAL'S BUSINESS AUTO AND COMMERCIAL UMBRELLA POLICIES WAS ERRONEOUS, UNSUPPORTED BY THE EVIDENCE, AND CONTRARY TO LAW. ACCORDINGLY, THE TRIAL COURT'S CONFIRMATION OF THE ARBITRATION AWARD: (1) ERRONEOUSLY ENTERED JUDGMENT THEREON AGAINST FEDERAL INSURANCE COMPANY ON THE BUSINESS AUTO POLICY IN THE AMOUNT OF $500,000.00 AND; (2) ERRONEOUSLY ENTERED JUDGMENT THEREON AGAINST FEDERAL INSURANCE COMPANY ON THE COMMERCIAL UMBRELLA POLICY IN THE AMOUNT OF $430,000.00.
 {¶ 15} "IV. IN THE ALTERNATIVE, IF THE TRIAL COURT'S FACTUAL FINDING THAT FEDERAL INSURANCE COMPANY'S PARTICIPATION IN THE ARBITRATION PROCEEDING WAS WITHOUT A RESERVATION BY FEDERAL OF ITS RIGHT TO LITIGATE COVERAGE DEFENSES UNDER FEDERAL'S BUSINESS AUTO AND COMMERCIAL UMBRELLA POLICIES WAS NOT ERRONEOUS AS A MATTER OF LAW ON THE FACTS PRESENTED, A GENUINE ISSUE OF MATERIAL FACT WAS PRESENTED BY FEDERAL REGARDING THE (SIC) WHETHER FEDERAL WAIVED ITS RIGHT TO A JUDICIAL DETERMINATION OF COVERAGE UNDER ITS POLICIES."
 {¶ 16} Further, appellees filed a cross-appeal and set forth the following cross-assignments of error for our consideration:
 {¶ 17} "I. THE TRIAL COURT ERRED IN NOT GRANTING THE ESTATE OF JOHN MCDONALD JUDGMENT IN THE FULL AMOUNT AS AGAINST CROSS-APPELLEE FEDERAL INSURANCE COMPANY.
 {¶ 18} "II. THE TRIAL COURT ERRED IN NOT AWARDING PREJUDGMENT INTEREST AGAINST CROSS-APPELLEE FEDERAL INSURANCE COMPANY IN THE CASE AT BAR."
 "Summary Judgment Standard" {¶ 19} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 {¶ 20} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 21} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citingDresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107.
 {¶ 22} It is based upon this standard that we review Federal's assignments of error and appellees' cross-assignments of error.
 I {¶ 23} Federal's First Assignment of Error concerns its business auto policy. Federal maintains, under this assignment of error, that the "Drive Other Car Broadened Coverage" endorsement contained in its business auto policy extends UM/UIM coverage to identified individuals and therefore, distinguishes this policy from the policy considered inScott-Pontzer. We disagree.
 {¶ 24} Federal's "Ohio Uninsured Motorists Coverage — Bodily Injury" endorsement in its business auto policy defines "Who Is An Insured" as follows:
 {¶ 25} "1. You.
 {¶ 26} "2. If you are an individual, any `family member.'
 {¶ 27} "3. Anyone else `occupying' a covered `auto' or a temporary substitute for a covered `auto.' * * *
 {¶ 28} "4. Anyone for damages he or she is entitled to recover because of `bodily injury sustained by another insured.' "
 {¶ 29} This is the identical language the Ohio Supreme Court considered in Scott-Pontzer when it concluded coverage extended to the employees of Superior Dairy. However, Federal maintains this case is distinguishable from Scott-Pontzer because a "Drive Other Car Broadened Coverage" endorsement identifies John, Elizabeth and Richard Raese as named insureds under the business auto policy
 {¶ 30} In Still v. Indiana Ins. Co., Stark App. No. 2001CA00300,2002-Ohio-1004, we held:
 {¶ 31} "Upon reviewing the automobile policy in the instant case, we fail to find that the endorsement to the policy including these two individuals distinguishes this case from Scott-Pontzer * * * in that the ambiguity still exists, i.e. the policy still list[s] the corporation as the name[d] insured, thereby extending coverage to the corporation's employees." Id. at 3.
 {¶ 32} We have reached this same conclusion in Amore v. GrangeIns. Co., Richland App. No. 02CA75, 2003-Ohio-3208; Dalton v. LumbermensMut. Ins. Co., Stark App. No. 2002CA00198, 2003-Ohio-2897; Moore v.Hartford Fire Ins. Co., Delaware App. No. 02CAE-10-048, 2003-Ohio-2037;Heidt v. Federal Ins. Co., Stark App. No. 2002CA00314, 2003-Ohio-1785;Jordan v. Travelers Prop. Cas. Ins. Co., Stark App. No. 2002CA00248,2003-Ohio-1309; Pahler v. Motorists Mut. Ins. Co., Stark App. No. 2002CA00022, 2002-Ohio-5762; Burkhart v. CNA Ins. Co., Stark App. No. 2001CA00265, 2002-Ohio-903.
 {¶ 33} Accordingly, based upon these previous decisions, we conclude the inclusion of John, Elizabeth and Richard Raese in the "Drive Other Car Broadened Coverage" endorsement, in Federal's business auto policy, does not remove the Scott-Pontzer ambiguity. Therefore, pursuant to Ezawa v. Yasuda Fire Marine Ins. Co., 86 Ohio St.3d 557,1999-Ohio-124, the trial court did not err when it concluded the decedent qualified as an insured under the business auto policy since the decedent, as a "family member" of Vernon McDonald's, was employed by Federal's named insured, Greer.
 {¶ 34} We also conclude the trial court properly determined that both Federal and Cincinnati must share in the proportion each policy's limit bears to the total of the available limits pursuant to an "Other Insurance" clause.[3] Both Federal's and Cincinnati's policies contain equal limits of $1,000,000. Thus, under a pro-rata analysis, both Federal and Cincinnati are required to pay $500,000 in UIM coverage to the decedent's estate.
 {¶ 35} Federal's First Assignment of Error is overruled.
 II {¶ 36} In its Second Assignment of Error, Federal contends the trial court erred when it concluded the decedent, John McDonald, qualified as an insured under its business auto and commercial umbrella policies. We disagree.
 {¶ 37} We determined, in Federal's First Assignment of Error, that both the decedent and Vernon McDonald are insureds under Federal's business auto policy. Therefore, as to this assignment of error, we will discuss only whether they qualify as insureds under the commercial umbrella policy. Federal's umbrella policy provides only liability coverage and features two insuring agreements: Coverage A, "Excess Follow Form Liability Coverage" and Coverage B, "Umbrella Liability Coverage." Federal maintains, and we agree, that Coverage B does not provide any coverage for claims arising out of the use of a motor vehicle. Accordingly, appellees claims for UIM coverage are limited to Coverage A.
 {¶ 38} Although Federal's commercial umbrella policy only provides liability coverage, we find UM/UIM coverage arises by operation of law because Federal does not have a valid and enforceable written offer and rejection of UM/UIM coverage pursuant to the Ohio Supreme Court's decision in Linko v. Indemn. Ins. Co. of N. Am., 90 Ohio St.3d 445,2000-Ohio-92. The Linko case requires that in making a written offer, the insurer must inform the insured of the availability of UM/UIM coverage, set forth the premium, describe the coverage and state the coverage limits. Id. at 449. Failure to do so results in UM/UIM coverage arising by operation of law. Therefore, Federal's commercial umbrella policy provides UIM coverage by operation of law.
 {¶ 39} Federal next argues the decedent's estate and the estate's beneficiaries are not "persons insured under the policy" and therefore, are not entitled to UIM coverage under Coverage A of the commercial umbrella policy. We disagree with this argument based upon the definition of "Insured" contained in Coverage A of the commercial umbrella policy. This definition provides:
 {¶ 40} "Insured means:
 {¶ 41} "1. the Named Insured stated in Item 1 of the Declarations;
 {¶ 42} "2. Any person or organization included as an insured in underlying insurance; and
 {¶ 43} "3. at your option and subject to the terms of this policy at the time of claim or suit, persons or organizations included as additional insureds in underlying insurance, but only for their liability arising out of operations of the Named Insured."
 {¶ 44} Pursuant to this definition, we conclude the decedent and Vernon McDonald are UIM insureds under Federal's commercial umbrella policy, Coverage A, because we previously determined they are insureds under Federal's business auto policy, an underlying policy. Accordingly, the trial court did not err when it determined the decedent and Vernon McDonald are insureds entitled to UIM coverage under Coverage A of Federal's commercial umbrella policy with the applicable policy limit of excess coverage in the amount of $20,000,000.
 {¶ 45} Federal's Second Assignment of Error is overruled.
 III, IV {¶ 46} Federal's Third and Fourth Assignments of Error raise issues concerning the arbitration proceeding. We find these assignments of error moot having determined that coverage exists under both the business auto policy and commercial umbrella policy.
 "Cross-Appeal" I {¶ 47} In their First Assignment of Error, on cross-appeal, appellees maintain the trial court erred when it denied their request to grant judgment, in the full amount of the arbitration award less applicable set offs, against Federal. We disagree.
 {¶ 48} In support of this argument, appellees cite the Ohio Supreme Court's decision in Goodyear Tire Rubber Co. v. Aetna Cas. Sur. Co., 95 Ohio St.3d 512, 2002-Ohio-2842. The Goodyear case involves a lawsuit filed by Goodyear Tire Rubber Company against Aetna Casualty Surety Company and several other insurance companies. Id. at ¶ 1. Goodyear sought declaratory judgments concerning insurance claims for pollution cleanup costs at twenty-two sites. Id.
 {¶ 49} One of several issues the Ohio Supreme Court addressed on appeal concerned the issue of allocation of coverage. The Court decided to adopt the "all sums" approach of allocation which "* * * permits the policyholder to seek coverage from any policy in effect during the time period of injury or damage." Id. at ¶ 6. "The `all sums' approach allows Goodyear to seek full coverage for its claims from any single policy, up to that policy's coverage limits, out of the group of policies that has been triggered." Id.
 {¶ 50} In adopting the "all-sums" approach, the Court held:
 {¶ 51} "1. When a continuous occurrence of environmental pollution triggers claims under multiple primary insurance policies, the insured is entitled to secure coverage from a single policy of its choice that covers `all sums' incurred as damages `during the policy period,' subject to that policy's limit of coverage." Id. at paragraph one of the syllabus.
 {¶ 52} We find appellees' reliance on the Goodyear case misplaced for two reasons. First, as the Court noted in the Goodyear case, "[t]he issue of allocation arises in situations involving long-term injury or damage, such as environmental cleanup claims where it is difficult to determine which insurer must bear the loss." Id. at ¶ 5. The case sub judice does not involve a long-term injury or damage. Rather, it involves an auto accident and based upon the policies at issue and the language contained in those policies, it is relatively easy to determine who must bear the loss.
 {¶ 53} Further, the Ohio Supreme Court specifically noted, in the Goodyear case, that:
 {¶ 54} "The starting point to determining the scope of coverage is the language of the insurance policies.
 "* * * {¶ 55} "It is well settled that `insurance policies should be enforced in accordance with their terms as are other written contracts. Where the provisions of the policy are clear and unambiguous, courts cannot enlarge the contract by implication so as to embrace an object distinct from that originally contemplated by the parties." Id. at ¶ 7, ¶ 8.
 {¶ 56} Second, unlike the policy in Goodyear that indicated it would cover all sums incurred as damages for injury during the policy period, Federal's business auto policy specifically provides that, "[o]ur share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on" either a primary or excess basis. See Ohio Uninsured Motorists Coverage Bodily Injury Endorsement at page 2. Also, Federal's commercial umbrella policy provides solely excess coverage and does not prorate if other insurance applies to the claim. See Federal Umbrella Policy, Form 07-02-0815, at 18.
 {¶ 57} Therefore, we decline to adopt the "all sums" approach, in cases involving motor vehicle policies of insurance, as we find this is not the type of case in which the Ohio Supreme Court contemplated the use of the "all-sums" approach for purposes of allocation. Accordingly, the trial court did not err when it denied appellees' request to grant the decedent's estate judgment in the full amount against Federal.
 {¶ 58} Appellees' First Assignment of Error on cross-appeal is overruled.
 II {¶ 59} In their Second Assignment of Error, on cross-appeal, appellees maintain the trial court erred in not awarding prejudgment interest against Federal. We agree.
 {¶ 60} An appellate court's review of a trial court's award of prejudgment interest is governed by an abuse of discretion standard.Landis v. Grange Mut. Ins. Co., 82 Ohio St.3d 339, 1998-Ohio-387. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
 {¶ 61} In its judgment entry, the trial court concluded as follows:
 {¶ 62} "* * * Because the arbitrators' award was not reduced to present value in any fashion, the Court concludes that the arbitrators' award provides full compensation, calculated as of 9/19/2001, for any and all past, present, or future damages and, thus, an award of prejudgment interest thereon is neither justified nor required to make the claimants whole." Judgment Entry, Oct. 16, 2002, at 7.
 {¶ 63} R.C. 1343.03(A) governs the award of prejudgment interest. This statute provides as follows:
 {¶ 64} "(A) In cases other than those provided for in sections1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgment, decrees, and order of any judicial tribunal for the payment of money arising out of tortuous conduct or a contract or other transaction, the creditor is entitled tointerest at the rate of ten per cent per annum, and no more, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract." (Emphasis added.)
 {¶ 65} We find the General Assembly's use of the phrase "creditor is entitled to interest" is mandatory language which requires the trial court to award prejudgment interest. See Pioneer Rural Elec. Co-Op v.Strunk, Shelby App. No. 17-99-09, 1999-Ohio-939; Dwyer Elec., Inc. v.Confederated Builders, Inc. (Oct. 29, 1998), Crawford App. No. 3-98-18. In Dwyer, the Third District Court of Appeals explained:
 {¶ 66} "[T]he plain language of R.C. 1343.03(A) states in no uncertain terms that when money is due and payable on a written instrument or on a judgment for payment of money based on a contract, `the creditor is entitled to interest.' The statute references no predicate determinations which need to be made before a creditor will be entitled to interest. Thus, once a party has a judgment for an underlying contract claim, as in this case, we find that he is entitled to interest as a matter of law. * * * R.C. 1343.03(A) reposes no discretion in the trial court * * *. When the liability issue was determined in the plaintiffs' favor, they were then entitled to prejudgment interest pursuant to the statute." (Emphasis sic.) Id. at 5.
 {¶ 67} Based upon the above interpretation of R.C. 1343.03(A), the trial court abused its discretion when it determined appellees were not entitled to prejudgment interest because the arbitrators' award provided full compensation for their injuries. Upon remand, the trial court may use its discretion to determine the date money became "due and payable" upon Federal's policies. The trial court is required to make this determination pursuant to the Ohio Supreme Court's decision in Landis.
 {¶ 68} In the Landis decision, the Ohio Supreme Court addressed the issue of prejudgment interest in a case involving a claim for underinsured motorists coverage. Plaintiffs' claim was submitted to arbitration and plaintiffs received an award of $1,300,000. Id. at 339. Thereafter, plaintiffs sought recovery of prejudgment interest. On appeal to the Ohio Supreme Court, the Court first determined that plaintiffs were entitled to recover prejudgment interest under R.C. 1343.03(A). Id. at 341. The Court also specifically found that, "[a] determination that the benefits became due and payable upon the entry of the arbitrator's award would, in this case, work an injustice by rewarding Grange for improperly denying benefits." Id. at 341-342.
 {¶ 69} Thus, the Court concluded:
 {¶ 70} "Whether the prejudgment interest in this case should be calculated from the date coverage was demanded or denied, from the date of the accident, from the date at which arbitration of damages would have ended if Grange had not denied benefits, or some other time based on when Grange should have paid Landis is for the trial court to determine. Upon reaching that determination, the court should calculate, pursuant to R.C. 1343.03(A), the amount of prejudgment interest due Landis and enter an appropriate order." Id. at 342.
 {¶ 71} Pursuant to the Landis decision, we conclude the trial court abused its discretion when it awarded prejudgment interest from the date of the entry of the arbitrators' award. Therefore, we remand this matter, to the trial court, for the court to determine, according to Landis, the date money became "due and payable" upon Federal's policies.
 {¶ 72} Appellees' Second Assignment of Error on cross-appeal is sustained.
 {¶ 73} For the foregoing reasons, the judgment of the Court of Common Pleas, Tuscarawas County, Ohio, is hereby affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
[1] Scott-Pontzer v. Liberty Mut. Fire Ins. Co., 85 Ohio St.3d 660,1999-Ohio-292.
[2] Farmers is Lori Scott's personal carrier.
[3] See Buckeye Union Ins. Co. v. State Auto Mut. Ins. Co. (1977),49 Ohio St.2d 213 and Erie Ins. Grp. v. Nationwide Mut. Ins. Co. (1989),65 Ohio App.3d 741. In Buckeye, the Ohio Supreme Court held:
"Where two insurance policies cover the same risk and both provide that their liability with regard to that risk shall be excess insurance over other valid, collectible insurance, the two insurers become liable in proportion to the amount of insurance provided by their respective policies." Buckeye at syllabus.