**ERIE INSURANCE GROUP, Appellee and Cross–Appellant,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY,**
**Appellant and Cross–Appellee, et al.**

[Cite as *Erie Ins. Group v. Nationwide Mut. Ins. Co.* (1989), 65 Ohio App.3d 741.]

Court of Appeals of Ohio,
Wood County.

No. WD–89–9.

Decided Dec. 29, 1989.

742

*Donald E. Theis,* for appellee and cross-appellant.

*Robert B. Spurlock,* for appellant and cross-appellee.

*Mark J. Metusalem,* for appellee and cross-appellant Liberty Mutual Insurance Company.

HANDWORK, Presiding Judge.

This case involves an appeal and cross-appeal from a judgment entry of the Wood County Court of Common Pleas. All three parties in this case are insurance companies. At issue is which company or companies must provide coverage to insureds who have been named as defendants in a civil suit for injuries sustained as the result of an automobile accident.

On May 8, 1986, Ann Marie Ring (hereinafter referred to by her current last name, Leganik), then a student at Bowling Green University in Bowling Green, Ohio, went to Dishop Ford–Nissan, Inc., a local car dealer, and made arrangements to rent a car. Leganik planned to drive the car to Columbus, Ohio, the next day for a job interview. After renting the car, however, Leganik was offered a ride to Columbus and chose to accept the offer, rather than put mileage on the rental car. She asked a roommate, Julie Bartholomew (hereinafter referred to by her current last name, Fraser), to return the rental car to Dishop Ford–Nissan, Inc., the next day before 2:00 p.m. so Leganik could avoid being charged for another full rental day. Fraser agreed and in the process of returning the car on May 9, 1986, was involved in an automobile accident with a vehicle occupied by Barbara Jones. Jones brought suit in her individual capacity and as an executrix in the Wood County Court of Common Pleas for injuries sustained in the accident and named both Fraser and Leganik as well as Dishop Ford–Nissan, Inc. as defendants.

At the time of the accident, Leganik was covered under her father's policy with Nationwide Mutual Insurance Company ("Nationwide") as an additional insured. Accordingly, Nationwide was contacted when notice of the suit was obtained by Leganik and her parents.

Fraser was covered under a policy issued to her father by Erie Insurance Company ("Erie"). Erie was therefore contacted by its insured when Fraser and her father learned of the personal injury suit against Fraser.

Liberty Mutual Insurance Company ("Liberty") was contacted by Dishop Ford–Nissan, Inc., because under the terms of a policy Liberty issued to Ford Motor Company and Ford Rent–A–Car System, Dishop Ford–Nissan, Inc. had liability coverage from Liberty for the rental vehicle involved in the accident.

On June 15, 1988, Erie filed a complaint for declaratory judgment. In the complaint, Erie alleged that Nationwide, Liberty or both were responsible as primary insurers of Fraser or, in the alternative, that all three insurers stood in the same relationship to Fraser and had pro rata responsibility to provide a defense or to pay settlement or judgment.

Nationwide answered, alleging that Liberty was the primary insurer, and that the coverage provided to Leganik by Nationwide was secondary. Nationwide also asserted a counterclaim and cross-claim against Liberty, pleading the right to a declaratory judgment involving all three companies.

Liberty filed an answer and amended answer to Erie's complaint. Nationwide filed an amended answer, cross-claim and counterclaim. Liberty then filed an answer to Nationwide's amended cross-claim in which Liberty asserted the defense of failure to state a claim upon which relief can be granted.

Liberty then filed a motion for summary judgment *instanter*, pursuant to leave of court. The substance of the argument supporting Liberty's motion dealt with irregularities which appeared on the face of the car rental agreement completed by Leganik and Dishop Ford–Nissan, Inc., and whether those irregularities barred Leganik and Fraser from coverage under the Liberty policy.

On December 12, 1988, a hearing was conducted to proceed with the declaratory judgment action, accept the testimony of any witness called by any party, and to receive a stipulation of facts prepared by the parties. At the proceedings, counsel for Liberty raised the defense of failure to state a claim upon which relief can be granted against Erie, as well as against Nationwide. As noted previously, Liberty had already raised the defense against Nationwide in its answer to Nationwide's cross-claim.

Liberty then presented a witness who testified that neither Leganik nor Fraser had ever asserted a claim for coverage with Liberty. The witness who

testified was the claims adjuster for Liberty who had handled the case from the time Dishop Ford–Nissan, Inc. informed Liberty an accident involving a rental car had occurred. On the basis of the witness's testimony, Liberty asserted that both Erie and Nationwide had failed to state a claim upon which relief could be granted, because neither insured for Erie or Nationwide had ever made a claim for coverage with Liberty. Since neither Leganik nor Fraser sought coverage from Liberty, their insurers, Erie and Nationwide, had no standing to assert a claim against Liberty in a declaratory judgment.

Following the submission of trial briefs, the court below filed a judgment entry and a memorandum decision on January 30, 1989. The lower court held that Nationwide and Erie were both responsible to provide coverage for their respective clients and may be responsible for pro rata damages. The court further found that Liberty had no liability to provide coverage to the parties in the personal injury case. The reasoning advanced by the lower court in support of its rulings dealt solely with the irregularities which occurred when the car rental agreement was completed at Dishop Ford–Nissan, Inc.

Nationwide filed an appeal to challenge the finding that Nationwide might have a pro rata responsibility with Erie for any damages awarded to Jones. Erie and Liberty both filed cross-appeals. Nationwide filed three assignments of error which state:

"1. The trial court committed substantial error, prejudicial to the rights of Defendant–Appellant in finding, determining and entering declaratory judgment that a policy of auto liability insurance issued by Defendant–Appellant providing coverage for its insured for an accident provided pro-rata coverage with other insurance provided by Plaintiff–Appellee covering the same accident.

"2. The trial court committed substantial error, prejudicial to Defendant–Appellant in finding, determining and entering declaratory judgment that a policy of insurance issued by Plaintiff–Appellee provided excess coverage to its insured for an accident when there was other insurance applicable to the accident on the same basis under the conceded facts of this case.

"3. The trial court committed substantial error, prejudicial to the rights of Defendant–Appellant in not finding, determining and in not entering declaratory judgment that a certain policy of insurance issued by Plaintiff–Appellee provided primary coverage for an accident had by its insured and in not declaring that a policy of insurance issued by Defendant–Appellant merely provided excess coverage over the limits of the policy of Plaintiff–Appellee when both policies were in full force and effect covering the same accident."

Liberty filed a brief which included a section titled "Issues Presented." While this section of Liberty's brief does not conform to App.R. 16 regarding

assignments of error, we will treat the following statement as Liberty's assignment of error:

"The only remaining issue with respect to Liberty is whether or not the trial Court committed prejudicial error when it failed to dismiss the Complaint and Counterclaim [*sic*] against Liberty for failure to state a claim upon which relief can be granted."

Erie filed a brief with the following three assignments of error:

"I. The trial court did not err in not dismissing the compliant [*sic*] and cross-claim against Liberty Mutual Insurance Company for failure to state a claim.

"II. The trial court erred in finding that Liberty Mutual Insurance Company's policy did not apply to the underlying accident.

"III. The trial court did not err in finding that the policies of Erie Insurance Group and Nationwide Mutual Insurance coverage applied on a pro-rata basis."

Following the filing of briefs, this court *sua sponte* remanded the case to the court below because the order appealed from was not final and appealable due to the failure to dismiss Erie's complaint, the failure to include any order regarding Nationwide's counterclaim and cross-claim and the failure to include any language indicating no just cause for delay. On September 27, 1989, an amended journal entry was filed dismissing Liberty as a party in the declaratory judgment action, dismissing Erie's complaint, and setting forth language indicating no just cause for delay remained. The amended journal entry still made no reference to any finding regarding Liberty's defense that Erie and Nationwide failed to state a claim upon which relief can be granted since neither Leganik nor Fraser ever filed a claim for coverage with Liberty. Nor did the amended journal entry specifically dismiss the cross-claim filed by Nationwide. The cross-claim of Nationwide against Liberty is still pending in the court below. However, because it involves the same parties and issues as are presently before this court and because the lower court has indicated there is no just cause for delay, we may proceed with this appeal knowing that the decision in this case will also govern the eventual resolution of the remaining cross-claim.

Unfortunately, no amended briefs were filed by any party in this action to rewrite assignments of error to reflect the procedural changes occasioned by the lower court's amended journal entry. Accordingly, this court must construe the assignments of error before it to fit the procedural position which is reality in this case. To the extent that Liberty's assignment of error and Erie's first assignment of error deal with the failure of the lower court to

dismiss the cross-claim, we find those assignments of error not well taken, as they do not address a final appealable order. The remainder of Liberty's assignment of error and Erie's first assignment of error dealing with whether Erie's complaint was properly dismissible will be considered in conjunction with the second assignment of error brought by Erie.

In determining whether the trial court erred when it found Liberty had no obligation under its policy to cover the accident, we must first consider whether a claim for coverage was ever properly made to Liberty. Liberty presented testimony from its claims adjuster that neither Leganik nor Fraser ever requested coverage from Liberty. On cross-examination, Erie was able to elicit testimony indicating that Liberty had been informed of the accident by Dishop Ford–Nissan, Inc., and that the procedure of Dishop Ford–Nissan, Inc. calling in the report of the accident was usual procedure. No testimony was sought by any party regarding the exact requirements for filing a claim with Liberty. Liberty continues to maintain that no claim was ever filed, and Erie continues to maintain that the notice provided to Liberty by Dishop Ford–Nissan, Inc. was all that was necessary to make a claim.

A review of the record before us reveals the following information regarding requirements for filing a claim with Liberty. Page one of the rental agreement completed by Leganik and Dishop Ford–Nissan, Inc. includes the following paragraph:

"9. **Accidents.** Customer shall immediately report any accident to Licensee and deliver to Licensee or its insurer *if so wanted* by Licensee, every process, pleading, notice, or paper of any kind received by Customer or any driver of the Vehicle relating to any claim, suit or proceeding connected with any accident or event involving the Vehicle. Neither Customer nor any driver of the Vehicle shall aid or abet the assertion of any such claim or proceeding and shall cooperate fully with Licensee and its insurer in investigating and defending the same." (Emphasis added.)

Page eleven of the policy issued by Liberty to Dishop Ford–Nissan, Inc. sets forth the following requirements:

"A. **YOUR DUTIES AFTER ACCIDENT OR LOSS.**

"1. **You** must promptly notify **us** or **our** agent of any **accident** or **loss**. **You** must tell **us** how, when and where the **accident** or **loss** happened. **You** must assist in obtaining the names and addresses of any injured persons and witnesses.

"2. Additionally, you and other involved **insureds** must:

"a.  Cooperate with us in the investigation, settlement or defense of any claim or suit.  No **insured** shall, except at his or her own cost, voluntarily make any payment, assume any obligation or incur any expense.

"b.  Immediately send **us** copies of any notices or legal papers received in connection with the **accident** or **loss.**

"c.  Submit at **our** expense and as often as **we** require to physical examinations by physicians **we** select.

"d.  Authorize **us** to obtain medical reports and other pertinent medical information.

"3.  Additionally, to recover for **loss** to a covered **auto** or its equipment **you** must do the following:

"a.  Permit **us** to inspect and appraise the damaged property before its repair or disposition.

"b.  Do what is reasonably necessary after **loss** at **our** expense to protect the covered **auto** from further **loss.**

"c.  Submit a proof of **loss** when required by **us.**

"d.  Promptly notify the police if the covered **auto** or any of its equipment is stolen."

On the basis of these provisions and on the basis of the testimony given in the court below, we find that a claim was filed with Liberty on behalf of Leganik and Fraser when Dishop Ford–Nissan, Inc. contacted Liberty.

Leganik immediately reported the accident to Dishop Ford–Nissan, Inc.  In turn, Dishop Ford–Nissan, Inc. immediately contacted Liberty.  Liberty had prompt notice and has enjoyed full cooperation from Leganik and Fraser.  Liberty contacted Fraser and took her taped statement.  Nothing in the record indicates either Fraser or Leganik failed to comply with the provisions on the rental agreement or in Liberty's policy to Ford which covered Dishop Ford–Nissan, Inc.  If further requirements existed, Liberty had the burden of demonstrating what those requirements were and how Leganik or Fraser failed to comply.  No such evidence was presented to this court.

Having found that a claim was filed by Leganik and Fraser with Liberty, we must next examine the irregularities which occurred when Leganik and Dishop Ford–Nissan, Inc. completed the rental agreement and determine whether those irregularities bar Leganik and Fraser from successfully claiming coverage from Liberty for the accident.

Leganik testified in her deposition that when she went to Dishop Ford–Nissan, Inc., there was no discussion about insurance coverage for accidents occurring while the car was rented to her.  Leganik testified that even though

the subject was not discussed, she assumed insurance was automatically provided to her when she rented the car.

Leganik further testified that no one ever inquired of her who would actually be driving the rental car. Leganik did not read the rental agreement before she signed it in two different places; she just complied with the instructions given to her by the Dishop Ford–Nissan, Inc. employee who had completed the form. Leganik testified she really was not given an opportunity to read the contract before she signed.

All of these factors influenced the manner in which the rental agreement was completed. One portion of the rental form provides for a listing of persons who are to be authorized drivers of the rental vehicle. That portion states:

"ONLY THE BELOW NAMED PERSONS ARE AUTHORIZED AS ADDITIONAL DRIVERS. IF NONE, PRINT 'NONE' ACROSS THIS SECTION AND HAVE SIGNED BY CUSTOMER."

The signature of Leganik appears on the line immediately following the above-quoted statement, but the word "none" was never written on that portion of the form.

The other irregularity occurred in the portion of the rental agreement entitled personal accident coverage. That portion of the form states:

"By this acceptance customer purchases accident coverage as described in the certificate of insurance (available upon request) and agrees to pay the amount as shown in the adjoining column."

Just below the above statement appears a section which provides lines for the customer to enter initials to indicate whether the customer declines or accepts personal accident coverage. Both lines are blank on the form completed by Dishop Ford–Nissan, Inc.'s employee when Leganik rented the car. No corresponding amount charged for the insurance coverage appears in the adjoining column.

The court below concluded these irregularities in the completion of the rental form barred Leganik and Fraser from claiming coverage from Liberty. This court must review the lower court's decision to see whether the decision constituted an abuse of discretion. An abuse of discretion is " * * * more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 173, 404 N.E.2d 144, 149.

The problems posed by the irregularities in the completion of the car rental agreement present a case of first impression in Ohio. However, several existing rules of law are applicable. First, it should be noted that the contract

in question is a preprinted form which Liberty had the opportunity to review and to contribute to before it was put into use by Dishop Ford–Nissan, Inc. Accordingly, any ambiguities created by the terms of the preprinted form must be construed liberally in favor of Leganik and Fraser. See *Home Ins. Co. v. Wigand* (App.1922), 3 Ohio Law Abs. 44, 44.

Second, it should be noted that the record clearly shows that an employee of Dishop Ford–Nissan, Inc. completed the form when Leganik rented the car. Dishop Ford–Nissan, Inc. was acting in the capacity of an agent for Liberty with regard to insurance matters, since Liberty's own witness testified she believed Liberty was the only company providing insurance under the Dishop Ford–Nissan, Inc. rental agreements. As a result, any conflicts arising between the written completion of sections of the rental agreement and the preprinted provisions of the rental agreement must be construed according to the written completion. See *Farmers Natl. Bank v. Delaware Ins. Co.* (1911), 83 Ohio St. 309, 94 N.E. 834, paragraph one of the syllabus.

■ Third, it must be noted that the Supreme Court of Ohio has stated that the use of a preprinted form places the burden on the insurer to demonstrate the client knew of the contract terms, understood the terms and made a rational decision to reject coverage. *Ady v. West American Ins. Co.* (1982), 69 Ohio St.2d 593, 597, 23 O.O.3d 495, 498, 433 N.E.2d 547, 549. Specifically, the *Ady* court stated:

"Insurance companies write the policies and present the pre-printed forms to customers, most of whom are unfamiliar with terminology found in the multi-page policies. Most customers accept the policies *in toto* and do not question, let alone actively negotiate to change or omit, any of the provisions in the pre-printed forms. Therefore, an insurance company has the burden of showing that any rejection was knowingly made by the customer. A customer has the option of rejecting coverage. However, to make a rational decision to reject coverage, a customer has to be aware of a contractual provision, understand its terms and agree to it. Thus, any rejection or exclusion should be conspicuous so that a customer is aware of its existence. Furthermore, the language should be clear and easily understood by a lay person. Also there should be evidence that the customer agreed to the restriction on coverage." *Id.* at 597, 23 O.O.3d at 498, 433 N.E.2d at 549.

While *Ady* dealt primarily with the acceptance or rejection of underinsured motorist coverage, the views expressed in *Ady* regarding preprinted forms and the burden preprinted forms place on insurance companies who use them are equally applicable to the acceptance or rejection of personal liability insurance when a customer rents a car.

■ Liberty had reviewed and approved the preprinted forms Dishop Ford–Nissan, Inc. used when it rented cars. Leganik, like most car rental customers, accepted the form without question. In fact, as previously pointed out, Leganik did not even complete the form, nor was she given opportunity to review the form. She simply signed in the two spaces indicated to her by the employee of Dishop Ford–Nissan, Inc. She was never given the opportunity to understand the provision relating to the rejection of insurance or to knowingly reject coverage. Therefore, the lower court abused its discretion when it ruled that Leganik was not entitled to insurance coverage from Liberty. Liberty had control of the form and of the agent who completed the form. Liberty must demonstrate that an express rejection of coverage was knowingly made by Leganik before Liberty can deny responsibility. Liberty failed to meet the burden of proof.

■ The failure of Liberty's agent to comply with the language of the preprinted form requiring the word "none" to be written in to exclude drivers other than Leganik from driving the rental car likewise results in coverage from Liberty being extended to Fraser. In the absence of the word "none," the terms of the preprinted form provided by Liberty to exclude other drivers from coverage by Liberty are not met. Since the exclusion of drivers other than Leganik from coverage by Liberty was never invoked, the omnibus clause of Liberty's policy with Dishop Ford–Nissan, Inc. applies. The clause in question states:

"Anyone else whom the named insured permits to use an owned, hired or borrowed covered auto is also an insured. In the event of a claim involving permissive use determination of whether the named insured actually gave permission is a question of fact."

The record is replete with evidence that Fraser was permitted to use the vehicle for the benefit of Leganik and that Fraser's use of the automobile at the time of the accident was a direct furtherance of Leganik's interests. Since Fraser's use of the vehicle did not deviate from the use for which permission was originally granted, the omnibus clause in Liberty's policy extends coverage to Fraser. See *Gulla v. Reynolds* (1949), 151 Ohio St. 147, 85 N.E.2d 116, paragraphs one and three of the syllabus. We note that other state courts considering similar situations of permissive use by someone other than the person who signed the rental contract have reached the conclusion that the coverage extends to the third party because the very nature of a rental car transaction inherently contains foreseeable situations where third parties will drive the rental car. See, *e.g., Royal Indemn. Co. v. Shull* (Mo.1984), 665 S.W.2d 345, 347–348; *Motor Vehicle Acc. Indemn. Corp. v. Continental Natl. American Group Co.* (1974), 35 N.Y.2d 260, 360 N.Y.S.2d

859, 861–862, 319 N.E.2d 182, 184–185. Erie's second assignment of error is well taken. Liberty owes coverage to both Leganik and Fraser as the primary insurer. The remainder of Liberty's assignment of error as modified by this court to reflect the actual procedural standing of this case is not well taken, as Erie and Nationwide had standing to file a complaint and cross-claim. The remainder of Erie's first assignment of error as modified by this court to reflect the actual procedural standing of this case is well taken since Liberty's complaint was not properly dismissed.

Since Liberty must extend coverage to Leganik and Fraser and is the primary insurer for Leganik and Fraser, the question of whether Erie and Nationwide have pro rata liability in the absence of coverage from Liberty is of no immediate concern. However, the Supreme Court of Ohio has indicated that Ohio appellate courts may not consider assignments of error moot in most instances. See *Criss v. Springfield Twp.* (1989), 43 Ohio St.3d 83, 84, 538 N.E.2d 406. Accordingly, we will consider Erie's third assignment of error and Nationwide's three assignments of error together to determine whether the lower court erred when it ruled that Nationwide and Erie had pro rata liability in the absence of coverage from Liberty.

Both Nationwide and Erie agree that if the language contained in both their policies is construed as providing "excess" coverage, pro rata liability is the proper result. See *Buckeye Union Ins. Co. v. State Auto Mut. Ins. Co.* (1977), 49 Ohio St.2d 213, 3 O.O.3d 330, 361 N.E.2d 1052, syllabus. Both Nationwide and Erie also agree that the provision in Nationwide's policy constitutes "excess" coverage.[1] However, Nationwide and Erie disagree about the meaning of the two clauses contained in the Erie policy and about whether those two clauses constitute pro rata coverage or whether they constitute "excess" coverage. The two clauses in dispute state:

"The policy's coverage is excess over any other collectible's insurance on an auto we insure that you do not own (including a temporary substitute) up to the limit(s) of protection for one auto."
and

"When there is other insurance applicable to the accident on the same basis, we will pay our share."

Nationwide asserts the two clauses are independent. Therefore, Nationwide states, the first clause provides excess coverage if the insured is driving a vehicle that the insured does not own, but which is covered by insurance

---

**1.** Nationwide's policy states:
"For losses involving the use of other motor vehicles, we will pay the insured loss not covered by other insurance."

from Erie. The second clause, in Nationwide's opinion, is a "pro rata" provision which leads to the inescapable result of Erie bearing first responsibility to provide insurance, with Nationwide liable only for excess coverage.

Erie argues the two clauses are not independent; rather, they must be read together and interpreted as a whole. Erie argues that the "other insurance clause" is actually an "excess" insurance provision since the two clauses, read together, provide for Erie's insurance to be void if the relevant rental insurance would be void if there is other insurance. Only in the event that the other insurance is applicable on the same basis as Erie does Erie provide pro rata coverage. Thus, the net effect of the two clauses is to provide excess coverage, not to create two separate exclusionary clauses, one excess and the other pro rata.

We agree with the court below that the two clauses in Erie's policy must be considered together, as the better rule is to interpret the provisions of a document as a whole. Liberty must assume primary coverage and Erie and Nationwide are responsible for any additional coverage on a pro rata basis. Erie's third assignment of error is well taken. Nationwide's first, second and third assignments of error are not well taken.

The trial court is reversed, in part, and affirmed, in part. Each party to this appeal shall pay one third of the court costs associated with this appeal.

*Judgment reversed in part*
*and affirmed in part.*

CONNORS and GLASSER, JJ., concur.