JOURNAL ENTRY and OPINION
{¶ 1} Appellant Latisha Lane appeals the trial court's decision granting summary judgment in favor of Rental Car Finance Corporation/Dollar Rent-A-Car. Lane assigns the following error for our review:
"I. The trial court erred to the prejudice of plaintiff-appellant by granting summary judgment in favor of defendant-appellees."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 {¶ 3} On July 6, 2001, Floyd Hull rented a car from Dollar Rent-A-Car located at the Cleveland Hopkins Airport. At the time of the rental, Hull represented that he would be the only authorized operator of the car. Hull purchased loss damage waiver insurance for $17.98 per day, but declined to obtain supplemental liability insurance.
 {¶ 4} On July 7, 2001, Hull's cousin, Latanya McFarland operated the car without Hull's knowledge or permission. Appellant Latisha Lane was a passenger in the car. While operating the car, McFarland lost control and drove the car into Marenta Davis' home. The collision resulted in personal injuries to Marenta Davis, as well as property damage to her home, and personal injuries to Lane.
 {¶ 5} At the time of the accident, McFarland was a minor without a driver's license.
 {¶ 6} On September 21, 2001, Lane filed suit against Rental Car Finance Corporation and McFarland. On October 15, 2002, Lane voluntarily dismissed the suit, but on July 7, 2003, refiled the case and added GEICO Direct as a party. In its Answer, Rental Car Finance Corporation filed a cross-claim against McFarland, and a third-party complaint against Hull.
 {¶ 7} Contemporaneously, on June 27, 2003, Davis also filed suit against Rental Car Finance Corporation and McFarland. In response, Rental Car Finance Corporation again filed a cross-claim against McFarland and a third-party complaint against Hull. Davis subsequently amended her complaint and named Hull as a defendant.
 {¶ 8} On January 28, 2004, the trial court consolidated the separate actions filed by Lane and Davis against Rental Car Finance Corporation. On July 13, 2004, Rental Car Finance Corporation filed its motion for summary judgment, which the trial court granted on February 24, 2005. Additionally, because neither McFarland nor Hull answered Lane's complaint, Rental Car Finance Corporation filed a motion for default judgment, which the trial court granted on September 8, 2005, in the amount of $143,000.
Summary Judgment
 {¶ 9} In her sole assigned error, Lane argues the trial court erred in granting summary judgment in favor of Rental Car Finance Corporation. We disagree.
 {¶ 10} We review an appeal from summary judgment under a de novo standard of review.[1] Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.[2] Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can reach only one conclusion which is adverse to the non-moving party.[3]
 {¶ 11} The moving party carries an initial burden of setting forth specific facts which demonstrate his or her entitlement to summary judgment.[4] If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be appropriate only if the non-movant fails to establish the existence of a genuine issue of material fact.[5]
 {¶ 12} In the instant case, Lane argues that no genuine issue of fact exists as to coverage for the accident. The pertinent clauses under the rental agreement are set forth as follows:
"B. WHO MAY OPERATE THE VEHICLE
The vehicle may be operated only by an `Authorized Driver.' Under this Agreement, an Authorized Driver is the renter and any additional person who appears at the time of rental and signs this agreement. An Authorized Driver must satisfy the age requirements of Dollar, have a valid driver's license, and fulfill other rental qualifications.
"E. WHAT ARE PROHIBITED USES OF THE VEHICLE?
The vehicle may not be used: (8) by anyone other than an authorized driver.
"G. CALCULATING THE RENTAL CHARGES
3. You will pay the charges for optional items you select at the beginning of the rental, such as * * * Supplemental Liability Insurance (SLI) . . .
"H. RENTERS' THIRD PARTY LIABILITY RESPONSIBILITY
1. You agree that You and/or Your insurance company will be responsible for handling, defending, and paying all third-party claims for bodily injury, death or property damage caused by or arising from the use or operation of the Vehicle during the rental and You and any Additional Authorized Driver(s) agree to defend, indemnify and hold harmless from and against any and all such third-party claims. UNLESS PROHIBITED BY LAW, DOLLAR DOES NOT PROVIDE YOU ANY THIRD-PARTY LIABILITY PROTECTION COVERING THIS RENTAL EXCEPT AS MAY BE PROVIDED PURSUANT TO H.2 BELOW.
2. Where available, and for an additional daily charge, if You have initialed that You accept the optional SLI at the beginning of rental, SLI provides You with protection against third-party auto liability claims * * *.
3. You understand that SLI is void if You violate the terms of the Agreement."[6]
 {¶ 13} It is clear from our review of the record and applicable law that McFarland was an unauthorized driver, which precluded coverage under the insurance policy for any accident involving her. Consequently, no issue of fact remains to be tried. We reached this conclusion from our review of the record. The record indicates that on July 6, 2001, Hull, accompanied by his cousins McFarland and Lane, went to Dollar Rent-A-Car to rent a car. It is uncontroverted that the above rental agreement was entered into by and between Hull and Dollar Rent-A-Car. The record indicates that only Hull's signature appears on the rental agreement, making him the only authorized driver.
 {¶ 14} Pursuant to the rental agreement, an authorized driver is the renter and any additional person who appears at the time of rental and signs the agreement. Although McFarland accompanied Hull to the rental location, she was not added as an additional driver. Further, Section B of the rental agreement would have precluded McFarland from being added to the contract as an authorized driver. Section B of the rental agreement requires an authorized driver to satisfy the age requirement and have a valid driver's license. The record reveals that McFarland was a minor and did not have a driver's license. Thus, McFarland was not an authorized driver of the car. Her unauthorized use of the car was a violation of the rental agreement, which precluded coverage for the accident.
 {¶ 15} The record also indicates that neither Hull nor McFarland was confused about whether McFarland was an authorized driver of the car. Hull admitted in response to Question 3 of Rental Car Finance's request for production of documents that he was the only authorized driver on the rental agreement. Also, Hull indicated in his response to interrogatories and request for admissions that he did not give McFarland permission to drive the car, and that he knew McFarland did not have a driver's license.
 {¶ 16} McFarland admitted in her response to interrogatories and request for admissions that she took the car without Hull's knowledge. Question 21 of Rental Car Finance's first set of interrogatories propounded to McFarland reads as follows:
"How did you come to obtain the car you were driving on the day of the accident?
ANSWER: * * * I saw Floyd put the keys above my mother's door and I waited for him to go downstairs and when he did so, I took the keys and left."
 {¶ 17} Here, from McFarland's actions, the reasonable inference is that McFarland knew she was not authorized to drive the car.
 {¶ 18} Nonetheless, Lane asserts that the employees of Dollar Rent-A-Car knew or should have known, that McFarland would be an additional driver. This conclusion is based on the fact that McFarland and Lane accompanied Hull to the rental location and helped to select the car. However, their mere presence and assistance in selecting the car in no way leads to such an inference.[7] The record, at the most, demonstrates that McFarland and Lane conversed briefly with the rental agent, but not about the transaction at hand. Thus, no reasonable inference could be drawn from the facts presented that would sanction Lane's argument.
 {¶ 19} Lane also asserts that Hull did not knowingly reject the supplemental liability insurance. Lane cites Erie Ins. Groupv. Nationwide Mut. Ins. Co.[8] to support her argument. However, the facts of the instant case are distinguishable. InErie, the renter of the vehicle testified that the subject of insurance was not discussed. In the instant case, the record reveals that Hull purchased loss damage waiver insurance under the contract for an additional $17.98 per day, but declined the supplemental liability insurance. All reasonable inferences indicate that the subject of insurance was discussed, that Hull knowingly rejected supplemental insurance under the policy and acknowledge this by initialing and signing the contract.
 {¶ 20} Further, Hull gave the following deposition testimony:
"Q. Just briefly, fair statement that you rent a lot of cars?
A. Yes, I do.
Q. For all kinds of reasons?
A. Yeah.
"* * *
Q. You had testified before, and please correct me, I don't want to put words in your mouth, and I hope I didn't misunderstand you, you had testified that the woman told you that you were taking insurance to cover nicks, dents, dings or damage to the car?
A. Anything that would happen to this car, I believe was her words.
Q. So you wouldn't have to pay for it?
A. Right, and it wouldn't be on my deductible, because I got a $500 deductible.
Q. Me too. It keeps the rates down.
A. Yeah."[9]
 {¶ 21} It is evident from the above exchange that Hull regularly rented vehicles; he was not a stranger to the process. It is also evident that he was not a novice to purchasing automobile insurance. Hull testified he had a $500 deductible, because it keeps the rate down.
 {¶ 22} Finally, Lane asserts that the trial court improperly considered inappropriate documentary evidence when it ruled on Rental Car Finance's motion for summary judgment. Lane specifically argues that the trial court improperly considered the affidavit of Bob Sorrells, the claims manager of Dollar Rent-A-Car.
 {¶ 23} It is well settled that in the context of a motion for summary judgment, both the moving and nonmoving party, if necessary, must direct the court's attention to evidentiary materials of the type listed in Civ.R. 56. Civ.R. 56(C) sets forth a limited list of material which may be considered when ruling on a motion for summary judgment.[10] Specifically, as provided by Civ.R. 56(C), summary judgment is appropriate only when it may be determined from "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any * * * that there is no genuine issue as to any material fact * * *."
 {¶ 24} Here, the record reveals that Bob Sorrells was the claims manager for Dollar Rent-A-Car who received and handled complaints filed against the company. He averred that the rental agreement that was attached to his affidavit was a true copy of the rental agreement entered into by and between Hull and Dollar Rent-A-Car on July 6, 2001. Sorrells further averred that he reviewed the agreement in his management capacity and it revealed that Hull did not designate anyone other than himself to be an authorized driver of the vehicle, and that the contract language states that the vehicle may only be driven by an authorized driver. Finally, Sorrells averred that Hull declined to purchase supplemental liability insurance.
 {¶ 25} The trial court properly relied on Sorrells' affidavit because it was based on his personal knowledge in his capacity as a claims manager. Under Civ.R. 56, Sorrells' affidavit was used to authenticate the rental agreement, and as such, the trial court properly considered it in ruling on Rental Car Finance's motion for summary judgment.
 {¶ 26} We conclude, based on the record before us and the applicable law, that Hull was the only authorized driver of the car and that he knowingly declined supplemental liability insurance. McFarland's unauthorized use of the car violated the terms of the rental agreement. As such, no insurance was available for the accident on July 7, 2001. There are no genuine issues of material fact remaining to be tried. Thus, the trial court properly granted summary judgment in favor or Rental Car Finance Corporation. Accordingly, we overrule Lane's sole assigned error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, P.J., and Corrigan, J., concur.
[1] Baiko v. Mays (2000), 140 Ohio App.3d 1, citing Smiddyv. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35; NortheastOhio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs. (1997),121 Ohio App.3d 188.
[2] Id. at 192, citing Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704.
[3] Temple v. Wean United, Inc. (1997), 50 Ohio St.2d 317,327.
[4] Dresher v. Burt, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107.
[5] Id. at 293.
[6] Rental Agreement.
[7] Colonial Penn Ins. Co. v. Wright (June 21, 1990), 3rd Dist. No. 1-88-56.
[8] (1989), 65 Ohio App.3d 741.
[9] Depo. at 79-80.
[10] Spier v. American Univ. of the Caribbean (1981),3 Ohio App.3d 28.