* James Piening is now deceased, and Bernard Silvers has been named as the successor administrator.
** DiJona Silvers was 16 when this case began. She is now 18 and a plaintiff in her own right.
 OPINION.
{¶ 1} Elveta Piening rented a car from defendant-appellant Enterprise Rent-a-Car of Cincinnati, Inc. ("Enterprise") and bought the additional liability coverages the company offered her. There was a wreck. She was killed. Her great-grandchildren were badly hurt. Enterprise claimed that Piening had breached her contract and that the insurance was void because she had allowed someone not specifically listed on the rental agreement to drive the car. The trial court held that Piening had not breached the contract and that the additional coverage was in effect for all parties.
 {¶ 2} The trial court was correct to the extent that Piening had not breached the contract, but, regardless, Piening's estate was not entitled to coverage under one of the additional policies of insurance she had purchased because it only covered bodily injury to third parties — in this case, the minor children. Accordingly, we affirm the trial court's judgment in part and reverse it in part.
 I. Elveta Piening Rents a Car {¶ 3} Elveta Piening, a 79-year-old retired woman who was planning to attend her granddaughter's wedding in Georgia, rented a car from Enterprise in May 2002. In addition to renting the car, Piening purchased three insurance policies that supplemented her own auto insurance. Two of them, the personal-accident insurance ("PAI"), providing a death benefit of $100,000, and the supplemental liability-protection insurance ("SLP"), providing $1,000,000 in coverage, are at issue here. The *Page 3 
PAI policy covered injuries to the renter and her passengers. The SLP policy provided protection to the renter and other authorized drivers from losses resulting from property damage or injury to third persons.
 {¶ 4} The rental agreement that Piening signed was a multi-part form run through a computer printer that filled in some blanks but left many to be completed in hand by Enterprise's rental agent, Stephanie Baskin. For example, Baskin had handwritten on the form Piening's driver's license number and that Piening was allowed to drive the vehicle in Georgia. In the space with the printed heading "Additional Authorized Driver — None Permitted Without Enterprise's Approval," Enterprise's computer system had printed the words "No Other Driver Permitted." But over those words Baskin handwrote "w/valid DL" and "Yvette Silvers." These words did not directly follow each other. To the left and beneath "Yvette Silvers" was written "w/valid DL." Also in this box on the form, there were the printed words "age" and "license number." Enterprise required that the name of any additional driver be listed, as well as that person's age and that person's driver's license number. Yvette Silver's age and driver's license number were not written on the rental agreement.
 {¶ 5} From Baskin's deposition testimony, it is clear that Enterprise was casual in adding authorized drivers to its rental agreements. Baskin never met Silvers or saw her license. Baskin testified that Enterprise generally authorized anyone age 21 or older with a valid driver's license to be an additional driver. This was confirmed by Robert Watlin, Enterprise's loss-control manager, a ten-year veteran of Enterprise, who testified that "short of someone appearing before the rental agent drunk, anyone with a license and over 21 would be authorized." The company charged no extra fees, either for the rental or for the extra insurance, to have additional drivers added to the rental agreement. *Page 4 
 {¶ 6} On the back of the rental agreement, it stated the following, in part-actually a very small part:
 {¶ 7} "SLP DOES NOT APPLY IN MEXICO; THE RENTAL AGREEMENT IS VIOLATED IF THE DAILY SLP CHARGE IS NOT PAID. SLP DOES NOT PROVIDE THIRD PARTY LIABILITY PROTECTION FOR INJURY TO, OR PROPERTY DAMAGE SUFFERED BY THE RENTER, ANY AUTHORIZED DRIVER OR EMPLOYEE OF THE RENTER OR FAMILY MEMBERS OF AFOREMENTIONED RELATED BY BLOOD, MARRIAGE, OR ADOPTION IF SUCH FAMILY MEMBER RESIDES IN THE SAME HOUSEHOLD WITH THE RENTER, AUTHORIZED DRIVER OR EMPLOYEE OF THE RENTER. SLP DOES NOT PROVIDE PERSONAL INJURY PROTECTION BENEFITS, UNINSURED/UNDERINSURED MOTORIST COVERAGE, NO FAULT, FIRST PARTY BENEFITS OR SUPPLEMENTARY NO FAULT INSURANCE. SLP IS ALSO SUBJECT TO THE TERMS, CONDITIONS, PROVISIONS, LIMITATIONS AND EXCLUSIONS CONTAINED IN THIS RENTAL AGREEMENT AND IN THE SUPPLEMENTAL LIABILITY POLICY. IF ANY PROVISIONS OF THE RENTAL AGREEMENT CONFLICT WITH ANY PROVISIONS OF THE SUPPLEMENTAL LIABILITY POLICY, THE TERMS OF THE SUPPLEMENTAL LIABILITY POLICY WILL APPLY. SLP MAY PROVIDE A DUPLICATION OF COVERAGE ALREADY FURNISHED BY A PERSONAL INSURANCE POLICY OR SOME OTHER SOURCE. THIS PURCHASE OF SLP IS NOT REQUIRED IN ORDER TO RENT A CAR."
This was in extremely small print, but all in capitals, probably meant to stand out from all the other gibberish crammed onto the page. Enterprise probably did not know that capitals are much more difficult to read than regular printing.[1] Or that a sans-serif font should not be used for text.
 {¶ 8} The "ticket jacket," which was the sleeve the rental agreement went into, summarized the insurance policies Piening had purchased and stated that coverage under the SLP policy was excluded for losses
 {¶ 9} "arising out of bodily injury or property damage sustained by a Renter or Authorized Driver or any relative or family member of the Renter or Authorized Driver who resides in the same household."
 II. The Fatal Accident {¶ 10} Late during the night she had rented the car, Piening left Cincinnati for Georgia. She was accompanied by four others: Yvette Silvers, DiJona Silvers, Erik Walker, and Thomas Hodge. Yvette Silvers was Piening's granddaughter. DiJona and Erik were Silvers's children, and Hodge was Silvers's boyfriend. None of the passengers lived with Piening. While Silvers and Hodge lived together, Silvers's children lived with plaintiff-appellee Curtis Walker, Erik's father and DiJona's legal guardian. *Page 5 
 {¶ 11) According to her husband, Piening generally drove only short distances at home and appears to have driven the rented car little beyond taking it home from Enterprise's office. Yvette Silvers was working two jobs at the time and was exhausted after leaving work at 11:00 that night. She testified that she had tried to drive for a short time but found herself unable to continue. So Hodge drove most of the way to Georgia, which Silvers said was her grandmother's intent in having him come on the trip. Silvers had no part in arranging for the rental car, and she testified that Piening had told her that she had arranged for both Silvers and Hodge to be authorized drivers. Piening, Silvers, and Hodge all appear to have had valid driver's licenses and auto insurance at the time. All were over 21.
 {¶ 12} The car accident occurred late at night. Witnesses, supported by the testimony of the Georgia State Patrol officer who reconstructed the scene, said that Hodge had drifted off the highway and, in attempting to get back onto it, had overcompensated. He lost control of the vehicle, and it rolled over several times. Piening was thrown from the car; so were the children. Piening was pronounced dead at the scene. The children were seriously injured.
 III. The Lawsuit {¶ 13} James Piening, the executor of Elveta Piening's estate, and Walker, the guardian of the minor children, sued Enterprise, seeking coverage under the additional insurance polices that Elveta Piening had purchased from Enterprise. Enterprise moved for summary judgment, arguing that the liability coverage under the SLP and PAI policies was void because Elveta Piening had breached the rental agreement by allowing Hodge, an unauthorized driver, to operate the rental car. *Page 6 
Enterprise relied on an exclusion in the PAI and SLP policies that stated that the coverage was void if the rental car was operated in violation of the rental agreement.
 {¶ 14} Enterprise also maintained that the SLP policy specifically excluded damage sustained by the renter, Elveta Piening, because the SLP coverage was meant to protect the renter from losses resulting from property damage or injury to third persons. The estate and Walker each moved for summary judgment, maintaining that Piening had not breached the rental agreement and, thus, that there was coverage under both policies.
 {¶ 15} The trial court entered summary judgment for the estate and Walker and denied Enterprise's motion. The court held that there was an ambiguity in the rental agreement concerning who was permitted to drive the rental car, and it thus construed the agreement against Enterprise, its drafter. Accordingly, the trial court held that anyone with a valid driver's license was an authorized driver. Since Hodge had a valid driver's license, Piening had not breached the rental agreement by allowing him to drive the rental car. Accordingly, the additional liability coverage purchased by Piening was in effect at the time of the accident. The trial court did not specifically address Enterprise's other argument that the SLP only covered bodily injuries to third persons.
 {¶ 16} Enterprise now appeals. In its three assignments of error, Enterprise maintains that the trial court erred by (1) denying summary judgment to Enterprise, and (2) granting summary judgment to Walker and the estate. *Page 7 
 IV. Standard of Review {¶ 17} The standard for our review of summary judgment is de novo.[2] Summary judgment is proper when there are no issues of material fact in dispute, the party seeking summary judgment is entitled to it, and reasonable minds can find only for the moving party.[3]
 V. Ambiguity {¶ 18} Enterprise argues that the rental agreement clearly excluded coverage under the SLP and PAI policies if the rental agreement was violated. Enterprise maintains that the rental agreement was violated when Piening allowed an unauthorized driver, Hodge, to operate the rental car. Enterprise contends that the only authorized drivers on the face of the agreement were Piening and Silvers.
 {¶ 19} The role of the court, when interpreting the terms of any contract, is to "give effect to the intention of the parties."[4] If the language of a contract is ambiguous, courts interpret the ambiguity against the drafter of the contract.[5] A contract is ambiguous only where its meaning is susceptible of two or more reasonable interpretations.[6] The burden of proof is on the drafter of a form contract to show that the buyer understood the terms.[7] When there is a conflict between the terms printed on a form contract and those written on it subsequently, the added terms prevail.[8] *Page 8 
 {¶ 20} "[T]he very nature of a rental car transaction inherently contains foreseeable situations where third parties will drive the rental car."[9] Unless it has been expressly prohibited, a person authorized to use a car is permitted to let others drive it.[10]
Finally, irregularities in completing rental-car agreements should be liberally construed to favor the renter.[11] And policies should always be liberally construed to favor insurance.
 {¶ 21} After reviewing the rental agreement in this case, we conclude, as did the trial court, that the terms regarding who was permitted to operate the rental car were ambiguous.
 {¶ 22} Over the printed words "No Other Driver Permitted," Enterprise's agent handwrote the name of Yvette Silvers, and to the left and below that name she handwrote "w/valid DL." From this writing, the rental agreement could have been interpreted to mean that only Silvers, if she had a valid driver's license, was permitted to drive the rental car, or to mean that any person with a valid driver's license could have driven the rental car.
 {¶ 23} Because there were at least two ways that this language could have been interpreted, we hold that it was ambiguous; thus, the language had to be construed against the drafter of the rental agreement. Accordingly, we hold that the rental agreement permitted any additional driver with a valid driver's license to operate the rental car. This interpretation of the rental agreement is supported by the fact that Enterprise readily authorized additional drivers without ever seeing them or their driver's licenses. Baskin never saw Silvers or her driver's license. *Page 9 
Further, another Enterprise agent, Watlin, testified that "short of a person appearing drunk before a rental agent," Enterprise would authorize others to drive the vehicle.
 {¶ 24} Because Hodge had a valid driver's license, he was an authorized driver of the rental car, and, thus, Piening did not breach the rental agreement. Thus, the exclusion that Enterprise attempted to rely on in the SLP and PAI policies — that coverage was void if the rental agreement was violated by having an unauthorized driver operate the rental car — did not apply.
 {¶ 25} Accordingly, the additional liability coverage purchased by Piening was in effect to the following extent: the minor children and Piening were all covered under the PAI policy, but despite the fact that Piening did not breach the rental agreement, only the minor children were covered under the SLP policy.
 VI. Materiality {¶ 26} The additional insurance bought by Piening would not have been void regardless of whether the contract's terms were ambiguous. Piening did not materially breach the rental agreement by permitting Hodge to drive the rented car.
 {¶ 27} For a "breach of contract" to have voided coverage under the additional insurance, the breach must have been material and must have prejudiced Enterprise.[12] We cannot say that Hodge driving the rental car was a material breach of the rental agreement when (1) Enterprise did not charge any fees for adding additional drivers to the agreement; (2) the cost of the insurance was not increased by having additional drivers; and (3) Enterprise's employees testified that anyone 21 years and older with a valid driver's license would be readily added to the agreement. *Page 10 
 {¶ 28} Here, Hodge was over 21 years old and had a valid driver's license. Enterprise was not prejudiced by Hodge driving the rental car, when he met Enterprise's requirements to do so. If Piening had asked, Enterprise would have added Hodge, or any other over-21 licensed driver, to the policy. Courts should not allow an insurance company to escape paying a valid claim because of an overly technical interpretation of the boilerplate language of the policy. Enterprise took the money for the coverage — it must pay the claim.
 VI. The SLP Protected Third Parties, Not the Renter of theCar {¶ 29} "An exclusion from liability must be clear and exact in order to be given effect."[13] The SLP policy, in clear language, excluded losses arising out of bodily injury sustained by the renter and family members who resided in the renter's household. This exclusion was printed on the back of the rental agreement and on the ticket jacket that was provided to Piening when she rented the car. And she may well have understood the exclusion in the SLP — or perhaps it was explained to her — since she also purchased the PAI, which provided coverage for her. There would have been no need for her to buy two policies if one would have been sufficient to cover both injuries to her and injuries to third parties.
 {¶ 30} Accordingly, because it is undisputed that Piening was the renter of the vehicle and that the SLP clearly excluded losses suffered by the renter, the estate did not have coverage under the SLP policy. The minor children, whose interests were represented by Walker, did have coverage. Although they were related to *Page 11 
Piening, they did not, at the time of the accident, reside in the same household with her. They lived with Walker and were thus third parties entitled to coverage.
 {¶ 31} Because the estate was not covered under the SLP, the trial court erred in granting summary judgment for the estate with respect to the SLP coverage.
 VI. Reversed in Part {¶ 32} With respect to coverage under the PAI, the trial court properly entered summary judgment for Walker and the estate. With respect to coverage under the SLP, the trial court erred in granting summary judgment to the estate because the SLP excluded bodily injury to the renter and any relative who resided in the renter's household. But because the minor children did not reside with Piening, the trial court properly granted summary judgment to Walker on the issue of SLP coverage. Accordingly, we affirm the trial court's judgment in part and reverse it in part. We remand the case to the trial court to enter judgment consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
HILDEBRANDT and DINKELACKER, JJ., concur.
[1] Cater v. Hart (Tex.App. 1929), 21 S.W.2d 1083; Pardee ConstructionCo. v. Superior Court (2002), 100 Cal. App. 4th 1081,123 Cal. Rptr. 2d 288. See, also, Painter, The Legal Writer (3rd ed. 2005) 47; http://www.mydesignprimer.com/fonts/capitals_usage_proper.shtml.
[2] Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105,671 N.E.2d 241; Flynn v. Westfield Ins. Co., 168 Ohio App.3d 94,2006-Ohio-3719, 858 N.E.2d 858, ¶ 6.
[3] Id.
[4] Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849,797 N.E.2d 1256, at ¶¶ 9-11.
[5] Id. at ¶ 13.
[6] Covington v. Lucia, 151 Ohio App.3d 409, 2003-Ohio-346,784 N.E.2d 186, at ¶ 18.
[7] Ady v. West American Ins. Co. (1982), 69 Ohio St.2d 593, 597,433 N.E.2d 547.
[8] Am. Hardware Mut. Ins. Co. v. Mansfield Auto Truck Plaza (1984),15 Ohio St.3d 367, 474 N.E.2d 310, paragraph one of the syllabus.
[9] Erie Ins. Group v. Nationwide Mut. Ins. Co. (1989),65 Ohio App.3d 741, 751, 585 N.E.2d 464.
[10] Security Mut. Casualty Co. v. Hoff (1978), 54 Ohio St.2d 426,429, 377 N.E.2d 509.
[11] Erie Ins. Group, supra.
[12] See Software Clearing House, Inc. v. Intrak, Inc. (1990),66 Ohio App.3d 163, 170, 583 N.E.2d 1056; Restatement of the Law 2d, Contracts (1981), Section 241; Ferrando v. Auto-Owners Mut. Ins. Co.,98 Ohio St. 3d 186, 2002-Ohio-7217, 781 N.E.2d 927.
[13] McKeehan v. Am. Family Life Assurance Co. of Columbus,156 Ohio App.3d 254, 2004-Ohio-764, 805 N.E.2d 183, ¶ 4, citing Lane v. GrangeMut. Co. (1989), 45 Ohio St.3d 63, 65, 543 N.E.2d 488. *Page 1