**FLYNN et al., Appellants,**

**v.**

**WESTFIELD INSURANCE COMPANY et al., Appellees.**

[Cite as *Flynn v. Westfield Ins. Co.*, 168 Ohio App.3d 94, 2006-Ohio-3719.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–050909.

Decided July 21, 2006.

Rendigs, Fry, Kiely & Dennis, L.L.P., Peter L. Ney, and John F. McLaughlin; Haverkamp, Brinker, Rebold & Riehl Co., and Douglas M. Morehart, for appellants.

Isaac, Brant, Ledman & Teetor, L.L.P., J. Stephen Teetor, and Jessica K. Walls, for appellee Westfield Insurance Company.

Roetzel & Andress and Bradley L. Snyder; Lord, Bissell & Brook and Sarah H. Dearing, for appellee United National Insurance Company.

Schroeder, Maundrell, Barbiere & Powers and Jay D. Patton, for appellee National Catholic Risk Retention Group, Inc.

Lindhorst & Dreidame Co., L.P.A., James F. Brockman, and David E. Williamson, for appellee St. Paul Fire & Marine Insurance Company.

---

SYLVIA S. HENDON, Judge.

{¶ 1} Plaintiffs-appellants Kevin Flynn ("Flynn") and Margaret Flynn have appealed from the trial court's entry of summary judgment in favor of defendants-appellees Westfield Insurance Company ("Westfield"), United National Insurance Company ("United National"), The National Catholic Risk Retention Group ("National Catholic"), and St. Paul Fire and Marine Insurance Company

("St. Paul"). For the following reasons, we reverse the trial court's judgment in part.

## I. Factual Background

{¶ 2} This case arose after Flynn was severely injured in an automobile accident. At the time of the accident, Flynn was a partner in the law firm of Griffin–Fletcher. He specialized in real estate law and was also employed by Lawyers Title of Cincinnati ("LTOC"), a real estate title company. Griffin–Fletcher and LTOC shared office space and were closely intertwined. Flynn additionally served as a volunteer for LaSalle High School, which was operated by the Roman Catholic Archdiocese of Cincinnati.

{¶ 3} Flynn's accident occurred on the morning of February 22, 2002, along Interstate 74 in Cincinnati, while he was driving a Jaguar that he had leased from Huntington National Bank. At the time of the accident, Flynn had been traveling from the office shared by Griffin–Fletcher and LTOC. His ultimate destination was LaSalle High School, where he was going to attend his first meeting as a member of its development board. But before Flynn left his office, he discovered documents necessary for a real estate closing that was to take place that same morning. The documents had been delivered to Flynn's office by mistake and should have been delivered to Winton Savings, where the real estate closing was to occur. Winton Savings was located near LaSalle High School. Because Flynn was already planning on traveling to LaSalle, he decided to deliver the documents to Winton Savings himself, rather than to use a courier. The accident occurred before Flynn reached Winton Savings.

{¶ 4} After the accident, Flynn was able to recover under his own insurance policy, as well as under the policy covering the vehicle that had forced his car off the road. He sought further recovery under several other insurance policies. The first of these policies was issued to Griffin–Fletcher and LTOC by Westfield; Flynn sought benefits under this policy based upon his status as a partner of Griffin–Fletcher and as an employee of LTOC. Flynn also sought to recover under policies issued to the Archdiocese by United National, National Catholic, and St. Paul. Flynn sought recovery under these policies based upon his status as a board member and volunteer for LaSalle High School.

{¶ 5} After determining that Flynn was not covered under the respective policies, the trial court granted summary judgment to Westfield, United National, National Catholic, and St. Paul. This appeal followed.

## II. Standard of Review

{¶ 6} This court reviews grants of summary judgment de novo, without any

deference to the trial court's decision.[1]  Summary judgment may appropriately be granted only when there exists no genuine issue of material fact, the movant is entitled to judgment as a matter of law, and the evidence, when viewed in favor of the nonmoving party, permits only one reasonable conclusion, and that conclusion is adverse to the nonmoving party.[2]

### III.  Westfield

{¶ 7} Westfield issued both an automobile insurance policy and an umbrella insurance policy to Griffin–Fletcher and LTOC.  Flynn sought to recover under both policies.  The underlying automobile policy contained an uninsured-motorist-coverage limit of $500,000.  The umbrella policy afforded $3,000,000 in coverage.

{¶ 8} We must determine whether Flynn qualified as an insured person under Westfield's automobile policy, and if he was an insured, whether the policy covered the particular automobile that Flynn was driving at the time of the accident.

{¶ 9} As we interpret the policy, we are mindful that our role is to give effect to the intent of the parties.[3]  We examine the policy as a whole, and if "the language of a written contract is clear, [we] may look no further than the writing itself to find the intent of the parties."[4]  We must give contractual terms their plain and ordinary meaning.[5]  But when a contract is ambiguous, we may consider extrinsic evidence to aid in determining intent.[6]  An ambiguous insurance policy will ordinarily be strictly construed against the insurer and in favor of the insured.[7]

### A.  Flynn Was an "Insured" Under Westfield's Automobile Policy

{¶ 10} The named insured in Westfield's automobile policy was "Lawyers Title of Cincinnati, Inc. DBA Griffin and Fletcher."  The policy specified that, for purposes of uninsured-motorist coverage, insured persons included "(1) you." "You" referred to the named insured, LTOC DBA Griffin–Fletcher.  Flynn must have qualified as "you" to have been covered under the policy.

---

1.  *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.

2.  *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189.

3.  *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11.

4.  Id.

5.  *Sharonville v. Am. Emps. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 6.

6.  *Galatis*, supra, at ¶ 12.

7.  Id. at ¶ 13.

{¶ 11} In *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.*, the Ohio Supreme Court held that language in an insurance policy listing a corporation as a named insured was ambiguous.[8] It further held that when a corporation was listed as the named insured, the corporation's employees were also insured under the policy.[9] The court reasoned that "a corporation can act only by and through real live persons * * * [and] [i]t would be nonsensical to limit protection solely to the corporate entity."[10] But the court later modified its decision and determined that only employees acting within the scope of their employment are covered when a policy lists a corporation as a named insured.[11] Here, it is undisputed that Flynn was acting within the scope of his employment for LTOC at the time of his accident. As an employee of the named insured corporation, he was insured as "you" under the policy.

██ {¶ 12} Along with the LTOC corporation, the Griffin–Fletcher partnership was included as a named insured. "A partnership is an aggregate of individuals and does not constitute a separate legal entity."[12] Accordingly, when a partnership is listed as the named insured, the individual partners are also insured.[13] Flynn was also an insured as a partner of Griffin–Fletcher.

{¶ 13} Thus, under the Westfield policy, Flynn was a "you" as a result of his status as an employee of LTOC and as a partner of Griffin–Fletcher. Consequently, Flynn qualified as an insured under the policy.

{¶ 14} But Westfield argues that the policy's broadened-coverage endorsement removed any ambiguity that resulted from listing the corporation and the partnership as the named insureds. As a result, Westfield asserts, Flynn did not qualify as an insured under the policy.

### B. Broadened-Coverage Endorsement

██ {¶ 15} The broadened-coverage endorsement extended the policy's coverage to a single individual, Mike Fletcher, a partner of Griffin–Fletcher, and his family members when they used vehicles not otherwise covered under the policy.

---

8. (1999), 85 Ohio St.3d 660, 665, 710 N.E.2d 1116, limited by *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256.

9. Id. at 664, 710 N.E.2d 1116.

10. Id.

11. *Galatis*, supra, at ¶ 62.

12. See *Weddle v. Hayes* (Sept. 5, 1997), 7th Dist. No. 96–BA–44, 1997 WL 567964.

13. Id.

{¶ 16} Westfield argues that this endorsement removed any ambiguity with respect to the policy's named insureds. Westfield contends that naming Fletcher individually demonstrated the intent not to include any other employees or partners of LTOC or Griffin–Fletcher as insureds.

{¶ 17} The Ohio Supreme Court recognized the shortcomings of a similar argument in *Westfield Ins. Co. v. Galatis.*[14] The court acknowledged the importance of the parties' intention to expand uninsured-motorist coverage through the broadened-coverage endorsement.[15] But the court also stated, "[R]uling that including individuals on a broadened-coverage endorsement prevents 'you' from being ambiguous would not be without its problems. That ruling would require that paying an additional premium actually reduces the coverage available under the policy. This is neither a just result nor a logical consistency."[16]

{¶ 18} Our reading of the broadened-coverage endorsement in this case convinces us that the parties intended to broaden coverage to Fletcher and his family when they operated vehicles not otherwise covered under the policy. Our conclusion is buttressed by the specific language of the endorsement: "the following is *added* to who is an insured" (emphasis added). We decline to adopt Westfield's coverage-limiting reading of the endorsement, which would result in a policyholder paying an additional premium only to receive reduced coverage.

{¶ 19} We conclude that the broadened-coverage endorsement simply expanded the coverage under the policy and had no effect on the ambiguity created by listing as the named insured a corporation and a partnership.

{¶ 20} Westfield next argues that even if Flynn was a "you" under the policy, he was not entitled to coverage because he was not driving a covered auto at the time of the accident.

### C. Westfield's Policy Is Ambiguous

{¶ 21} The declarations page of Westfield's policy contained a "Schedule of Coverages and Covered Autos." This schedule listed the policy limits for various types of coverage, including uninsured-motorist coverage, and it stated that "each of these coverages will apply only to those autos shown as covered autos." Thus, according to the declarations page, an insured must have been in a covered auto to be entitled to uninsured-motorist coverage.

---

14. *Galatis*, supra, at ¶ 53–55.

15. Id. at ¶ 55.

16. Id.

{¶ 22} But the uninsured-motorist endorsement did not explicitly require that an insured be in a covered auto. This endorsement defined who was an insured for purposes of uninsured-motorist coverage:

{¶ 23} "1. You

{¶ 24} "2. If you are an individual, any 'family member'

{¶ 25} "3. Anyone else 'occupying' a covered 'auto' or a temporary substitute for a covered auto. The covered 'auto' must be out of service because of its breakdown, repair, servicing, loss or destruction

{¶ 26} "4. Anyone for damages he or she is entitled to recover because of 'bodily injury' sustained by another 'insured.' "

{¶ 27} The endorsement specifically required those who were insured as "anyone else" to be in a covered auto. But it did not impose such a requirement upon the other categories of insureds, including "you." It is a reasonable conclusion that the absence of such a requirement indicated that the endorsement did not require "you" to be in a covered auto.

{¶ 28} The uninsured-motorist endorsement additionally contained an "Other–Owned–Vehicle" exclusion. This exclusion stated the following:

{¶ 29} "This insurance does not apply to * * *

{¶ 30} "5. 'Bodily Injury' sustained by

{¶ 31} "a. You while 'occupying' or when struck by any vehicle owned by you that is not a covered 'auto' for Uninsured Motorists Coverage under this Coverage Form."

{¶ 32} This exclusion supports an interpretation that the endorsement did not require "you" to be in a covered auto. Had the definition of "you" contained such a requirement, the "other-owned-vehicle" exclusion would have been redundant.[17] It would have been needless to exclude noncovered autos from coverage if the definition of "you" required an insured to be in a covered auto.

{¶ 33} We conclude that Westfield's automobile policy was ambiguous and open to different interpretations regarding whether an insured defined as "you" must have been in a covered auto. In determining how to construe the ambiguous policy, we are guided by the Ohio Supreme Court's analysis in *Galatis*.[18] The court stated, "While an ambiguity is construed in favor of one who has been

---

17. See *Westfield Ins. Co. v. Ellis*, 11th Dist. No. 2003–T–0093, 2004-Ohio-4393, 2004 WL 1872823, ¶ 34.

18. See *Galatis*, supra, at ¶ 35.

determined to be insured, an ambiguity in the preliminary question of whether a claimant is insured is construed in favor of the policyholder." [19]

{¶ 34} Because we have determined that Flynn was insured as "you" under the policy, we construe the policy in his favor.[20]  We hold that Flynn was entitled to coverage under Westfield's automobile policy.

{¶ 35} The trial court erred in granting summary judgment to Westfield. Summary judgment should instead have been entered in favor of Flynn.

### D.  Umbrella Policy

{¶ 36} Flynn additionally argues that he was entitled to uninsured-motorist coverage under the umbrella policy issued by Westfield.  But Westfield argues that this excess coverage was rejected by LTOC and hence was unavailable.

{¶ 37} The trial court determined that because Flynn was not covered under the underlying automobile policy, he was not entitled to coverage under the umbrella policy.  The trial court was correct in its conclusion that Westfield had no liability under the umbrella policy until coverage had been exhausted under the underlying automobile policy.  But because the trial court found no underlying coverage, it did not consider whether coverage under the umbrella policy had been validly waived.

{¶ 38} Because we have concluded that Flynn was entitled to uninsured-motorist coverage under the automobile policy, we remand this cause for the trial court to determine whether umbrella coverage had been waived, and if it had not been waived, whether it provided coverage for Flynn.

### IV.  United National, National Catholic, and St. Paul

{¶ 39} The Archdiocese was protected by several tiers of insurance coverage. United National issued the Archdiocese's primary liability-insurance policy.  National Catholic and St. Paul issued excess-liability policies to the Archdiocese. But these excess policies were subject to the provisions of United National's underlying policy and provided coverage only if coverage was afforded under United National's policy.

{¶ 40} United National's policy provided coverage for, among others, Archdiocesan volunteers and board members acting within the scope of their

---

19.  Id.

20.  Flynn would still be entitled to coverage if the policy were construed in favor of the policyholder.  "[I]t arguably benefits the policyholder to insure against losses sustained by those operating vehicles on its behalf."  Id. at ¶ 38.

duties. It is undisputed that Flynn was a volunteer and board member for the Archdiocese. But borrowing a course-and-scope-of-employment analysis from workers' compensation case law, the parties disagree as to whether Flynn was acting within the scope of his duties as a volunteer and board member at the time of his accident.

{¶ 41} The trial court applied the "coming and going" rule and concluded that Flynn could not recover under any of the Archdiocese's policies. The trial court determined that because Flynn was driving to LaSalle at the time of his accident, he was not in the course and scope of his duties as a volunteer and board member.

{¶ 42} Flynn argues that because volunteers are distinguishable from employees, the coming-and-going rule was inapplicable, and therefore he was in the course and scope of his duties while traveling.

### A. The Coming-and-Going Rule

{¶ 43} It is well-settled Ohio law that employees are not within the scope of their employment when they travel to and from work. The Ohio Supreme Court has stated, "As a matter of law, a master is not liable for the negligence of his servant while driving to work at a fixed place of employment, where such driving involves no special benefit to the master other than the making of the servant's services available to the master at the place where they are needed."[21] Expounding on this proposition, the court stated that "an employer is usually not concerned with the means of transportation used or the route taken by his employee in getting to work * * * [and] [the employee] is usually not subject to the direction or control of his employer as to any details of any transportation enterprise that may be involved in getting him there."[22]

{¶ 44} The Fifth Appellate District has stated that "a commute to a fixed site does not fall under a 'within course and scope' definition" because "[h]ow an employee commutes to work is the employee's choice or option, not a duty imposed by the employer."[23] The Eighth Appellate District has elaborated on the rationale for this rule of law: "[E]mployees should be compensated only for those injuries arising out of the discharge of their duties and not risks and hazards 'such as those of travel to and from work over streets and highways,

---

21. *Boch v. New York Life Ins. Co.* (1964), 175 Ohio St. 458, 26 O.O.2d 47, 196 N.E.2d 90, paragraph two of the syllabus.

22. Id. at 463, 26 O.O.2d 47, 196 N.E.2d 90.

23. *Troiano v. Steitz,* 5th Dist. No. 04CAE02013, 2004-Ohio-4811, 2004 WL 2028672, ¶ 22 and 29.

which are similarly encountered by the public generally.' " [24]   The court contrasted employees driving to a fixed place of employment with employees who drive as a job function.   The latter group of employees is "continuously in the discharge of his or her duties." [25]

{¶ 45} In this case, Flynn's ultimate destination on the day of the accident was LaSalle High School, a fixed location.   The Archdiocese derived no benefit from Flynn's actions while he traveled to LaSalle.   Flynn was not performing any duties for the Archdiocese during his travel, and the Archdiocese was neither concerned with, nor did it control, Flynn's commute.   Applying the coming-and-going rule, we conclude that because Flynn was driving to LaSalle at the time of his accident, rather than actively engaging in his duties as a volunteer, he was not entitled to coverage under any of the Archdiocese's policies.

## B.   Volunteers v. Employees

{¶ 46} Flynn argues that the "coming-and-going" rule used in an employment context does not apply because he was not employed by the Archdiocese, but was instead serving as a volunteer.   Flynn argues that, as a volunteer, he sacrificed his personal time for the Archdiocese's benefit while both commuting and volunteering.

{¶ 47} Flynn relies on decisions from two other appellate districts to support his argument that he qualified for coverage during his travel to the site of his volunteer activity.   He first relies on the Third Appellate District's decision in *Zirger v. Ferkel.*[26]   In that case, Zirger was employed by a local school district and was injured in a car accident while traveling home from a meeting that she had attended as a volunteer at the request of her employer.   Zirger sought to recover under an automobile insurance policy issued to the school district.   The Third Appellate District held that Zirger was an insured under the policy because the policy specifically covered employees "while performing duties related to the [district's] business." [27]

---

24.   *Bodzin v. Martin,* 8th Dist. No. 84066, 2004-Ohio-5390, 2004 WL 2252046, ¶ 15, quoting *Indus. Comm. v. Baker* (1933), 127 Ohio St.345, 188 N.E. 560, paragraph four of the syllabus.

25.   Id.

26.   3d Dist. No. 13–02–05, 2002-Ohio-2822, 2002 WL 1300769, overruled on other grounds in *Finn v. Nationwide Agribusiness Ins. Co.,* 3d Dist. No. 1–02–80, 2003-Ohio-4233, 2003 WL 21904743, ¶ 21.

27.   Id. at ¶ 13 and 18.

{¶ 48} Flynn also relies on the Second Appellate District's decision in *Commercial Union Ins. Co. v. Scavo*.[28]  *Scavo* involved a volunteer for the Toledo Shrine Club who was in an automobile accident while traveling on behalf of the Shrine Club.  The Shrine Club was covered under an insurance policy that contained an endorsement stating, "Anyone volunteering services to you is an 'insured' while using a covered 'auto' you don't own, hire or borrow to transport your clients or other persons in activities necessary to your business."[29]  The *Scavo* court concluded that the Shrine Club volunteer was covered under this endorsement because he was transporting volunteers to participate in an activity that would further the Shrine Club's business.[30]

{¶ 49} Both *Ferkel* and *Scavo* are distinguishable from the case before us. Unlike United National's policy, the policy at issue in *Ferkel* did not require the insured to be in the course and scope of employment.  In fact, it was undisputed in *Ferkel* that Zirger was not in the scope of her employment when the accident occurred.[31]  United National's policy did not contain the alternate definition of "insured" that allowed Zirger to recover if injured while performing duties related to her employer's business.

{¶ 50} And the insurance policy at issue in *Scavo* contained an endorsement that specifically covered volunteers driving automobiles in furtherance of the Shrine Club's activities.  This endorsement was an exception to the general rule that an employee is not acting in the scope of employment while commuting.  No such endorsement was contained in United National's policy.  Because Flynn was injured while traveling to LaSalle, he was not in the scope of his duties as a volunteer.

{¶ 51} Flynn further relies on federal tax code provisions to distinguish between employees and volunteers.  He argues that the coming-and-going rule is inapplicable to volunteers because volunteers are able to deduct travel expenses to and from a volunteer activity, whereas an employee cannot deduct travel expenses to and from work.

{¶ 52} We are not persuaded by Flynn's argument.  These deductions serve as an incentive to encourage people to donate their time to volunteer activities. Such deductions in no way affect a determination whether a volunteer was within the scope of his volunteer duties while traveling to a fixed site.

---

**28.**  (Mar. 4, 1992) 2d Dist. No. 1297, 1992 WL 42827.

**29.**  Id.

**30.**  Id.

**31.**  *Ferkel*, 2002-Ohio-2822, 2002 WL 1300769, at ¶ 13.

{¶ 53} For the purposes of the coming-and-going rule, we conclude that a volunteer is indistinguishable from an employee. Just as an employer derives no benefit from an employee traveling to or from work, a particular organization, in this case the Archdiocese, derives no benefit while its volunteers are traveling to or from the location where they will volunteer. A volunteer performs no duty while traveling, nor does the volunteer organization control a volunteer's commute.

{¶ 54} Because Flynn was injured while traveling to LaSalle, he was not in the scope of his duties as a volunteer or board member. Under these circumstances, he was not covered under United National's policy, and he was not entitled to recovery from United National, National Catholic, or St. Paul.

### V.  Conclusion

{¶ 55} Consequently, we affirm the trial court's grant of summary judgment to United National, National Catholic, and St. Paul. But because Flynn was entitled to coverage under Westfield's automobile insurance policy, and may be entitled as well to coverage under the umbrella policy, we reverse the trial court's entry of summary judgment in favor of Westfield. We remand the cause for further proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

DOAN, P.J., and SUNDERMANN, J., concur.