**CONTINENTAL CASUALTY COMPANY, Appellee**

v.

**PRO MACHINE, Randy Egbert and Paul Massey t/a and Paul Massey, Individual**

**Appeal of Paul Massey.**

**Paul Massey, Appellant**

v.

**Chris Rahley, CNA Insurance, Continental Casualty Company, Burns & Burns Associates, and Leland C. King Agency, Inc., Appellees.**

Superior Court of Pennsylvania.

Argued Oct. 4, 2006.
Filed Jan. 17, 2007.

1112

Jeffrey S. Tarker, New Castle, for appellant.

John C. Grugan, Philadelphia, for CNA and Continental, appellees.

Cathie J. Fagan, Pittsburgh, for Continental, appellee.

BEFORE: HUDOCK, ORIE MELVIN and BENDER, JJ.

OPINION BY HUDOCK, J.:

¶ 1 Paul Massey (Massey), a partner in Pro Machine (Pro Machine or the Partnership), appeals from an order granting summary judgment to Continental Casualty Company (Continental) in the latter's declaratory judgment action. In this case of first impression, we are asked to determine whether Massey is entitled to underinsured motorist (UIM) benefits under a business automobile policy issued by Continental to Pro Machine. Upon careful review, we reverse and remand for further proceedings.

¶ 2 Pro Machine is a Pennsylvania partnership, registered as a fictitious name, under which Massey and Randy Egbert (Egbert) trade as a machine shop. In 2001, Massey owned a Harley Davidson motorcycle (the motorcycle) and a Grand Prix, both of which were titled in his name; he used these vehicles to make customer calls on behalf of Pro Machine. Massey Deposition, 5/25/02, at 8, 23–24; Egbert Deposition, 11/22/04, at 32. In May 2001, Massey and Egbert filled out an application on behalf of Pro Machine with the Burns & Burns agency for a commercial insurance package, including automobile

insurance. Thereafter, Continental issued Policy No. B2050146716 (effective June 26, 2001, through June 25, 2002) (the Policy). Declaratory Judgment Complaint, Exhibit A.

¶ 3 On August 15, 2001, Massey was seriously injured while operating the motorcycle in an automobile accident caused by the negligence of Angela M. Flaisman. Massey recovered $15,000.00 in policy limits from Ms. Flaisman's insurer, Allstate Insurance Company. Massey also recovered $15,000.00 in UIM benefits under a policy he purchased from Dairyland Insurance Company for coverage on the motorcycle. In search of additional UIM coverage, Massey filed a claim with Continental for the $100,000.00 UIM coverage limits of the Policy.

¶ 4 Continental denied UIM coverage, claiming that Massey was not a "Named Insured" under the Policy and that the motorcycle was not a "covered motor vehicle" pursuant to the UIM "household" exclusion. Consequently, Massey initiated a law suit against Continental at No. 10528–02 by writ of summons on May 14, 2002. On June 26, 2002, Continental filed a declaratory judgment action at No. 10699–02. Massey filed his complaint on July 23, 2003, alleging bad faith, negligence, and breach of contract against Continental for failing to pay Massey UIM benefits (the bad faith action). On November 25, 2003, the two lawsuits were consolidated for discovery purposes only.

¶ 5 On January 11, 2005, Continental filed a motion for summary judgment in its declaratory judgment action, to which Massey filed a reply and a cross-motion for summary judgment. All of these post-discovery pleadings were filed under both docket numbers. On August 11, 2005, the trial court disposed of the cross-motions for summary judgment in the declaratory judgment action in favor of Continental. Again, that order was filed under both

dockets. Massey filed a timely notice of appeal from the order granting Continental summary judgment in the declaratory judgment action (No. 730 WDA 2006). Out of extreme caution, Massey simultaneously filed a notice of appeal in the bad faith case (No. 731 WDA 2006).

■ ¶ 6 Initially, we must determine if the appeal at No. 731 WDA 2006 is properly before us. "[A]n appeal may be taken as of right from any final order of an administrative agency or lower court." Pa.R.A.P. 341. An order is final if (1) it disposes of all claims and all parties in an action, Pa.R.A.P. 341(b)(1); (2) it is expressly defined as a final order by statute, Pa.R.A.P. 341(b)(2); or (3) the trial court files a determination of finality with regard to that order, Pa.R.A.P. 341(b)(3) and (c)(1). Recall that the bad faith and declaratory judgment actions were consolidated for discovery purposes *only,* a fact conceded by both parties. Although included on the bad faith docket, cross-motions for summary judgment were filed only in the declaratory judgment action. No motion for summary judgment was filed in the bad faith case; consequently, there is no corresponding order of court in that case. Although included on the bad faith docket, the order granting summary judgment to Continental was entered only in the declaratory judgment action. That was a final order in the declaratory judgment action because it formally disposed of all the claims and parties therein. Pa. R.A.P. 341(b)(1). However, the final order in the declaratory judgment action does not qualify under any of the above definitions as a final order in the bad faith action. Accordingly, the appeal at No. 731 WDA 2006 is quashed because no final order of court has been entered in the bad faith case from which an appeal could be taken.

¶ 7 In the appeal at No. 730 WDA 2006, Massey presents three questions for our consideration:

Did the trial court err in granting summary judgment in favor of Continental where Massey was a Named Insured under the policy at issue and the household exclusion did not apply to defeat his claim for UIM coverage under the Business Auto Coverage Form issued by Continental?

Did the trial court err in granting summary judgment in favor of Continental where, assuming *arguendo* that the legal fiction of a partnership can be the sole Named Insured for purposes of UIM coverage without necessarily including the individual (and legally responsible) partners as Named Insureds, the identification of a partnership alone or in conjunction with the individual partners creating such partnership as Named Insureds within a policy of insurance creates an ambiguity with regard to the coverage afforded thereunder which must be resolved in favor of coverage for the insured?

Whether, in light of the trial court's errors of law with regard to the identification of Massey as a Named Insured, the presence of ambiguities which must be resolved in favor of coverage, and the resultant inapplicability of the "household exclusion," the trial court abused its discretion by failing to determine that UIM coverage did exist with regard to Massey's accident and enter an order consistent with that outcome?

Massey's Brief at 4. Because these questions are interrelated and all challenge the trial court's grant of summary judgment, we shall address them together. Our scope of review of an order granting summary judgment is plenary. We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Chenot v. A.P. Green Services, Inc.*, 895 A.2d 55, 60–61 (Pa.Super.2006) (citation omitted).

¶ 8 Motions for summary judgment implicate the plaintiff's proof of the elements of his cause of action. *Chenot*, 895 A.2d at 61 (citation omitted). Summary judgment is proper "if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2(2). In other words, "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report," Pa. R.C.P. 1035.2(1), and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense. *Chenot*, 895 A.2d at 61.

¶ 9 When reviewing a grant of summary judgment, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. *Id.* We will disturb the trial court's order only upon an error of law or an abuse of discretion. "Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration." *Chenot*, 895 A.2d at 61 (citation omitted). Consequently, the court abuses its discretion if, in

resolving the issue for decision, it misapplies the law, exercises its discretion in a manner lacking reason, or does not follow legal procedure. *Id.* (citation omitted).

¶ 10 Where the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden. It is not sufficient to persuade the appellate court that it might have reached a different conclusion if charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. *Chenot*, 895 A.2d at 61 (citation omitted). An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused. *Id.* at 61–62 (citation omitted).

¶ 11 Viewing the record in the light most favorable to Massey as the nonmoving party and resolving all doubts in his favor, we conclude that the trial court abused its discretion in granting summary judgment to Continental because a genuine issue of material facts exists which precludes that order.

¶ 12 Continental issued the Policy in June 2001 as part of a commercial insurance package covering the operations and assets of Pro Machine. The Policy consists of declarations (the Declarations),

common policy conditions, coverage forms, and endorsements. Under the heading "Insured Name and Address," the Declarations read: "Pro Machine, Randy Egbert and Paul Massey, T/A." Further down the page, the "Named Insured" is identified as "a partnership." According to Item Two of the Declarations (Schedule of Coverages and Covered Autos), the Policy provides the following coverages: liability, uninsured and UIM, collision and comprehensive. Item Three of the Declarations (Schedule of Covered Autos You Own and Coverages) specifies a 1988 Ford Stakebody and a 1996 Dodge Ram Pick-up as being covered motor vehicles; both of these vehicles were titled in the Partnership's name at the time of the accident.

¶ 13 Turning to the Policy's UIM provisions, Item Two of the Declarations indicates that UIM coverage is applied according to "Covered Auto Symbol 2." That designation provides that UIM coverage is available for "only those 'autos' you own ... This includes those 'autos' you acquire ownership of after the policy begins."[1] The UIM endorsement provides that an "insured" is entitled to UIM benefits for a covered motor vehicle. An "insured" is defined in the UIM endorsement as:

1. You.

2. If you are an individual, any "family member."

3. Anyone else "occupying" a covered "motor vehicle" or a temporary sub-

---

1. On the application for insurance dated May 5, 2001, the applicant is listed as "Pro Machine Randy Egbert and Paul Massey t/a." *See* Massey Deposition, 5/25/02, Exhibit 1. The application expressly lists under "vehicle description" a 1996 Dodge Ram Pick-up and a 1988 Ford Stakebody. Unlike the Policy, however, the box for "Covered Auto Symbol 7" is checked on the application as applying to UIM coverage. *Id.* "Covered Auto Symbol 7" provides that the related coverage (UIM) is available for only those vehicles "specifically listed" in the Declarations for which a premium charge is shown. This difference in the Covered Auto Symbol designation represents a change between May and June of 2001 as to what vehicles would be "covered autos" with respect to UIM coverage. Whereas the application indicates that UIM coverage would apply only to those vehicles specifically listed in the Policy (Covered Auto Symbol 7), the Policy itself indicates that "only those autos you own" would be covered (Covered Auto Symbol 2).

stitute for a covered "motor vehicle . . . ."

4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

The UIM endorsement also includes an exclusionary clause, commonly referred to as the "household" exclusion, which provides that UIM coverage does not apply to

(4) "Bodily Injury" sustained by:

a. You while "occupying" or when struck by any vehicle owned by you that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Form.

The meaning of "you" is found in the Business Auto Coverage Form: "Throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations."

■ ¶ 14 We note that UIM coverage "is first-party coverage and, in that sense, the coverage follows the person, not the vehicle." *Wolgemuth v. Harleysville Mutual Insurance Co.*, 370 Pa.Super. 51, 535 A.2d 1145, 1150 (1988) (citation omitted). Given the Policy language, the question of UIM coverage depends on whether Massey qualifies as "you," *i.e.*, a "Named Insured," and was occupying a "covered auto" at the time of the accident. If so, then he is entitled to UIM benefits.

¶ 15 On appeal, Massey argues that he is a "Named Insured" because of the legal status of partnerships in Pennsylvania, *i.e.*, a partnership is not a legal entity separate and apart from the individual general partners. Massey's Brief at 18. According to Massey, the effect of insuring a partnership in Pennsylvania is akin to insuring the individual partners. Based on this argument, Massey concludes that his recovery of UIM is not precluded by the "household" exclusion; rather, because he is a "Named Insured," the motorcycle falls within the Auto Coverage Symbol 2 designation of UIM-covered autos. Therefore, Massey claims, he is entitled to the policy limits of $100,000.00 in UIM benefits.

¶ 16 Continental counters that a partnership can be an insurable entity separate from its general partners,[2] and that, in this case, the Policy identifies the Partnership as the "Named Insured" and the Partnership's two automobiles as the covered vehicles. Continental's Brief at 12–13. Based on this argument, Continental concludes that, because Massey is not a "Named Insured," the motorcycle is not a covered automobile, and the "household" exclusion prevents Massey from recovering UIM benefits.

¶ 17 In granting summary judgment to Continental, the trial court found that "under Continental's Business Automobile Policy there is nothing to indicate that Mr. Massey or Mr. Egbert's personal vehicles were insured through the [P]artnership's policy." Opinion, 8/11/05, at 2. Moreover,

---

2. Not surprisingly, Continental does not provide any case law directly supporting this claim, nor has our research produced any. While both parties cite *Nationwide Mutual Insurance Co. v. United States Fidelity and Guaranty Company*, 529 F.Supp. 194 (E.D.Pa. 1981), and *Sourbeer v. Nationwide Insurance*, 37 Pa.D. & C.3d 21 (Com.Pl.Cumberland Co.1985), those cases are not precedential, *see Werner v. Plater–Zyberk*, 799 A.2d 776, 782 (Pa.Super.2002) (noting that Superior Court is not bound by federal decisions) and *Jamison v. Concepts Plus, Inc.*, 380 Pa.Super. 431, 552 A.2d 265, 267 (1988) (noting that appellate courts are not bound by the decisions of courts of common pleas), are factually distinguishable from the case at hand, and appear to favor Massey's argument that a partnership is not a distinct entity from its partners. *See for example, Nationwide*, 529 F.Supp. 194 (reading policy with named insured designation of "Harold and Warren Treegoob T/A Treegoobs" as a whole, designation includes individual partners and "any relative" pursuant to specific endorsement).

the trial court found: "the 'household exclusion' clause of the [P]olicy limits the coverage to the vehicles that are listed and thus [Massey] will be unable to recover from Continental." *Id.* These conclusions are incorrect for two reasons. They fail to consider whether Massey was a "Named Insured" under the Policy, and they fail to consider the impact of the Covered Auto Symbol 2 designation for UIM coverage. Interpreting the Policy to resolve these two issues is a prerequisite to determining whether the "household" exclusion applies to preclude UIM coverage for the motorcycle.

¶ 18 The interpretation of an insurance policy is a question of law for the court. Our standard of review, therefore, is plenary. In interpreting the language of an insurance policy, the goal is "to ascertain the intent of the parties as manifested by the language of the written instrument." *Kane v. State Farm Fire and Casualty Co.,* 841 A.2d 1038, 1042 (Pa.Super.2003) (citation omitted). The polestar of our inquiry is the language of the insurance policy. *Madison Construction Co. v. Harleysville Mutual Insurance Co.,* 557 Pa. 595, 735 A.2d 100, 106 (1999) (citation omitted). When analyzing a policy, words of common usage are to be construed in their natural, plain, and ordinary sense. *Mitsock v. Erie Insurance Exchange,* 909 A.2d 828, 2006 WL 2874167, at *2 (Pa.Super.Oct.11, 2006) (quotations and citations omitted). When the language of the insurance contract is clear and unambiguous, a court is required to give effect to that language. Although a court must not resort to a strained contrivance or distort the meaning of the language in order to find an ambiguity, it must find that contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer. *Mitsock,* 909 A.2d 828, 2006 WL 2874167, at *2.

¶ 19 As indicated above, the UIM endorsement defines an insured as "you" and "if you are an individual, any family member." The Business Auto Coverage Form provides that "you" refers to the "Named Insured." The Policy identifies the "Named Insured" as "Pro Machine, Randy Egbert and Paul Massey T/A," and it describes the "Named Insured" as "a partnership." Construing the words of the Policy in their natural, plain and ordinary sense, we look to the meaning of the term "partnership." In Pennsylvania, a partnership is "an association of two or more persons to carry on as co-owners of a business for profit." 59 Pa.C.S. § 311(a). In the seminal case of *In re Morrison's Estate,* 343 Pa. 157, 22 A.2d 729, 732 (1941), our Supreme Court announced that a partnership "is not a legal entity having as such a domicile or residence separate and distinct from that of the individuals who compose it." Thus, under the Liquid Fuels Tax Act of 1927, the individual partners of F. Hanson and Company, F. Hanson and Frank Morrison, were deemed to be the "dealers," not the partnership; as such, their personal property was subject to the Commonwealth's lien for unpaid liquid fuel taxes. Relying on *Morrison,* we held in *McElhinney v. Belsky,* 165 Pa.Super. 546, 69 A.2d 178 (1949), that the transfer of a sole proprietorship by the owner to a partnership in which the owner was a partner does not constitute a sale of the business; thus, the broker hired by the owner to sell the business was not entitled to a sales commission.

¶ 20 More recently, we reiterated the status of partnerships in the context of a partner's personal injury suit against the partnership:

We deem it to be the law in Pennsylvania and the approved opinion in most other jurisdictions that a partnership is not recognized as an entity like a corporation, that it is not a legal entity having as such a domicile or residence separate and distinct from that of the individuals who compose it. It is rather a relation or status between two or more persons who unite their labor or property to carry on a business for profit.

*Svetik v. Svetik,* 377 Pa.Super. 496, 547 A.2d 794, 797–98 (1988) (citing *Tax Review Board of the City of Philadelphia v. D.H. Shapiro Co.,* 409 Pa. 253, 185 A.2d 529, 533 (1962)).[3] In *Svetik,* we held that a partner may not bring a negligence suit against his partnership because he would, in effect, be suing himself. *Svetik,* 547 A.2d at 800. In Pennsylvania, "[i]t is axiomatic that a party may not sue himself." *West Penn Administration, Inc. v. Pittsburgh National Bank,* 289 Pa.Super. 460, 433 A.2d 896, 901 (1981). In reaching its conclusion, the *Svetik* court relied on the concept of imputed negligence: As a general rule, every member of a partnership is liable for a tort committed by one of the members acting in the scope of the firm business, even if the other partners did not participate in, ratify or have knowledge of the tort. *Svetik,* 547 A.2d at 799 (citation omitted). Necessarily, then, when a person is injured as the result of the negligent acts of a partner acting within the scope of his duties, the partners become joint and severally liable. In other words, the averred negligence of the individual partner is imputed to all the partners. *Id.* (citing 59 Pa.C.S. § 325, now 15 Pa.C.S.A. § 8325 (Wrongful act of partner)). Therefore, a partner—to whom the averred negligence

is imputed—may not sue his partnership for negligence resulting in his own injury. *Svetik,* 547 A.2d at 800. *Compare,* "Tort Action for Personal Injury or Property Damage by Partner Against Another Partner or the Partnership," 39 A.L.R.4th 139 (concerning partner suit against partnership for intentional tort).

¶ 21 In the similar context of unincorporated associations, our Supreme Court found in *Spica v. International Ladies Garment Workers' Union,* 388 Pa. 382, 130 A.2d 468 (1957), that the International Ladies Garment Workers' Union (ILGWU), an unincorporated association, was effectively functioning through its local members on North Broad Street in Philadelphia "so as to constitute that address a place where it regularly conducted 'business or association activity' sufficient to make it amenable to service of process." *Spica,* 130 A.2d at 481. Simply stated, the ILGWU was not a separate entity from its local members for purposes of receiving service of legal papers. Likewise, we have held that a member of an unincorporated, nonprofit baseball association who was actively engaged in the association's business had no cause of action against the association for personal injuries. *Bowser v. Hershey Baseball Association,* 357 Pa.Super. 435, 516 A.2d 61 (1986); *see also, Plasterer v. Paine,* 375 Pa.Super. 407, 544 A.2d 985 (1988) (holding that member of unincorporated association who has suffered damages through the tortious conduct of another association member may not recover from association).

¶ 22 In the auto liability insurance context, several treatises support the proposition that, where a policy is issued to an

---

**3.** An area of exception, in which courts and legislative bodies have treated partnerships as legal entities, is taxation. *Svetik,* 547 A.2d at 798; *see Freedman v. Tax Review Board of the City of Philadelphia,* 434 Pa. 282, 258 A.2d 323 (1969); *Tax Review Board v. Belmont*

*Laboratories Co.,* 392 Pa. 473, 141 A.2d 234 (1958); *Houston v. City of Pittsburgh,* 8 Pa. Cmwlth. 468, 303 A.2d 860 (1973); *see also,* 28 P.L.E. Partnerships § 52 and 59A Am. Jur.2d Partnership § 698.

individual operating a business under a trade name, the named insured is the individual. According to one treatise,

> [w]here an automobile liability policy names a partnership as the insured and then lists the names of the individual partners in describing the named insured, the partners as individuals, as well as the partnership as an entity, are covered.

7 *Couch on Insurance* § 110:5 (3d ed. 1997) (citations omitted). *See also*, Alan I. Widiss, *Uninsured and Underinsured Motorist Insurance* § 4.4(C), at 83 (rev. 2d ed. 1999) (noting that when automobile insurance is issued in an insured's trade name, coverage claims by that individual's relatives have usually been sustained); Irvin E. Schermer, *Automobile Liability Insurance* § 40.02[2], at 40-13-40-14 (3d ed. 1995).

¶ 23 Other jurisdictions also agree that when an insurance policy names individuals along with their trade name, coverage extends to those individuals, as well as to their business. *See, Simmons v. Insurance Company of North America*, 17 P.3d 56, 61-62 (Alaska 2001) (involving claim by daughter against policy issued to father's partnership and reviewing cases from Third Circuit, New Jersey, Florida, Illinois, Kentucky, Wisconsin); *General Casualty Co. of Wisconsin v. Outdoor Concepts*, 667 N.W.2d 441 (Minn.App.2003) (citing insurance treatises and other jurisdictions); *see infra, Flynn v. Westfield Insurance Company*, 168 Ohio App.3d 94, 858 N.E.2d 858 (2006) (involving partner's claim against law firm's policy).

■■■■ ¶ 24 The case law, the treatises, and our previous observation that "a partnership is not a legal entity separate from its partners," all support the conclusion that an insurance policy which lists a partnership name as the "insured" extends coverage to the individuals comprising that partnership, as well as to the partnership

itself. Applying this conclusion to the Policy at hand, we find that the meaning of the phrase "Pro Machine, Randy Egbert and Paul Massey T/A" is not ambiguous. Reasonably minded persons could not differ as to whether this provision designates the Partnership, the individual partners, or both as the "Named Insured." The Declarations list under the "Named Insured" heading the name of the Partnership and the names of the individuals who trade as the Partnership. Moreover, the Declarations identify the "Named Insured" as a partnership. A partnership is not a separate legal entity from its partners; as such, it cannot be insured independently of its partners. Therefore, the term "Named Insured" necessarily includes Massey and Egbert in their capacity as partners trading as Pro Machine.

¶ 25 This construction of "Named Insured" gives effect to the specific terms of the UIM endorsement. Pursuant to the UIM definitions, an "insured" includes (a) "you" and (b) "if you are an individual, any family member." If, as Continental suggests, the term "Name Insured" only refers to the Partnership as an independent entity, the terms "individual" and "family member" become meaningless because a partnership cannot have a family member. *Accord Insurance Company of Evanston v. Bowers*, 758 A.2d 213, 217 (Pa.Super.2000) (finding that, because social agency identified as named insured was not natural person, reference to "family member" in definition of "insured" did not apply to claim for UIM benefits filed by estate of juvenile ward). Similarly, the UIM "household" exclusion refers to "bodily injury." If, as Continental suggests, the term "Named Insured" only refers to the Partnership as an independent entity, this term becomes meaningless because a partnership cannot suffer "bodily injury."

¶ 26 Accepting Continental's argument that the Partnership as an independent entity is the "Named Insured" requires us to read the UIM endorsement as if the references to "individual," "family member," and "bodily injury" were not there. Under Pennsylvania law, however, the court's duty is "to ascertain the intent of the parties as manifested in the language of the written instrument." *Mutual Benefit Insurance Co. v. Haver*, 555 Pa. 534, 725 A.2d 743, 746 (1999) (citation omitted). In discharging this duty, the court must view the policy in its entirety, giving effect to all of its provisions. *Blocker v. Aetna Casualty and Surety Co.*, 232 Pa.Super. 111, 332 A.2d 476, 478 (1975); *Bowers*, 758 A.2d at 216 (stating that insurance policy must be read in entirety and intent of policy is gathered from consideration of entire instrument).

¶ 27 The Policy as a whole and the UIM provisions in particular indicate that the parties intended to protect individuals who, acting on behalf of Pro Machine, are involved in an automobile accident with an underinsured motorist while occupying a covered motor vehicle. This conclusion is supported by Massey's deposition testimony. Therein, he explained that, in purchasing automobile insurance for Pro Machine, the partners wanted coverage for the vehicles titled in the Partnership's name and their personal vehicles because both were used for the business. Specifically, Massey stated:

> Well, when John Kehoe came in to sell us insurance—naturally, it was a good deal or we would probably not have went with him, but he asked us if we had needed [sic] insurance on our vehicles. He told us that we needed insurance on our vehicles, I should say. Randy and I were both there. He said: You use your own vehicles for sales and business? And I said: Yes, we do. He said: Then you need everything covered that you drive. He says to me: Do you want

> all your vehicles covered through this company that you use? And I said: Yes. And at that point in time he put everything on.
>
> * * *
>
> Mr. Kehoe ... implied to us at that point in time that we needed to have our personal cars and vehicles covered because we drove them for company business. And we all agreed that anything that we drove should be covered.
>
> We also told him that we needed underinsurance and uninsured motorist coverage on our insurance because of the fact that there could be any number of one of the specified drivers driving these vehicles. We needed them covered. We told him at that time we needed everything covered, we wanted no problems in this business, someone coming back; and he agreed.

Massey Deposition, 5/24/02, at 22, 66–67. This testimony, if believed by a jury, demonstrates that Massey expected coverage on his personal vehicles when used on behalf of the Partnership. Egbert did not suggest otherwise in his deposition. Rather, Egbert testified that he did not handle the Partnership's insurance; Massey did. Egbert Deposition, 11/22/04, at 19, 33–34, 46. Consequently, Egbert did not have a personal understanding as to what types of coverage were being purchased or whether personal vehicles were to be covered under the policy. *Id.* at 25–26, 33, 48–49.

¶ 28 In further support of our interpretation, we find extremely persuasive a decision by the intermediate appellate court of Ohio. In *Flynn v. Westfield Insurance Company*, 168 Ohio App.3d 94, 858 N.E.2d 858 (2006), an injured motorist brought an action to recover uninsured motorist benefits under a policy issued to the law firm in which he was a partner. At the time of his automobile accident, Flynn was driving his own vehicle, but he was working in his

capacity as a partner of the law firm. The *Flynn* court held that a "partnership is an aggregate of individuals and does not constitute a separate legal entity. Accordingly, when a partnership is listed as the named insured, the individual partners are also insured." *Flynn*, 858 N.E.2d at 862 (citing *Weddle v. Hayes*, 1997 WL 567964 (Ohio App. 7th Dist. September 5, 1997)). Hence, the *Flynn* court found the partner was an insured under the policy given his status as a partner of the law firm and, therefore, he was entitled to uninsured motorist benefits. *Cf., Westfield Insurance Co. v. Galatis*, 100 Ohio St.3d 216, 797 N.E.2d 1256 (2003) (holding that only employees acting within the scope of their employment are covered when a policy lists a corporation as a named insured).

▆▆▆ ¶ 29 Based on the foregoing, we hold that Massey is a "Named Insured" in his capacity as a partner of Pro Machine. As a "Named Insured," Massey would be entitled to UIM coverage if he was occupying a covered motor vehicle in his capacity as a partner of Pro Machine at the time of the accident.

▆▆▆ ¶ 30 Accordingly, we now address whether Massey was occupying a covered motor vehicle at the time of the accident. Because Massey is a "Named Insured" in his capacity as a partner of Pro Machine, he is "you" for purposes of the Covered Auto Symbol 2 designation regarding UIM coverage and the UIM "household" exclusion. The Covered Auto Symbol 2 designates "what is a covered auto" for purposes of UIM coverage: those autos you own or those autos you acquire ownership of after the policy begins. Because Massey is "you" and owns the motorcycle, the motorcycle is a covered motor vehicle. The "household" exclusion, upon which

Continental and the trial court rely, provides that UIM coverage is not available for bodily injury sustained by "you" while occupying a vehicle that is not a covered automobile for UIM coverage. Because Massey is "you" and the motorcycle is a covered auto, the "household" exclusion does not apply.

▆▆▆ ¶ 31 In sum, Massey is a "Named Insured" in his capacity as a partner of Pro Machine. The motorcycle is a covered motor vehicle pursuant to Auto Symbol Coverage 2. The UIM "household" exclusion does not apply because Massey was operating a covered motor vehicle. Accordingly, Massey is entitled to UIM coverage if, and only if, he was occupying the motorcycle in his capacity as a partner of Pro Machine at the time of the accident. The record at hand does not establish whether Massey was riding the motorcycle while working on behalf of the Partnership at the time of the accident. This presents a genuine issue of material fact. Consequently, the trial court erred in granting summary judgment to Continental, and we are constrained to remand for further proceedings.

¶ 32 Appeal at No. 731 WDA 2006 quashed. Order at 730 WDA 2006 reversed and case remanded for further proceedings. Jurisdiction relinquished.