J-A27015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| THE RIDGEWOOD GROUP, LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MILLERS CAPITAL INSURANCE COMPANY | |
| Appellee | No. 1138 EDA 2016 |

Appeal from the Order Entered March 9, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): January Term, 2015 No. 2263

BEFORE:  PANELLA, J., LAZARUS, J., and FITZGERALD, J.[*]

MEMORANDUM BY PANELLA, J.          **FILED FEBRUARY 28, 2017**

Appellant, The Ridgewood Group, LLC ("Ridgewood"), appeals from the order granting summary judgment to Appellee, Millers Capital Insurance Company ("Millers"), thereby dismissing Ridgewood's complaint asserting claims of breach of insurance contract and bad faith. Ridgewood argues that the trial court committed an error of law in determining that the instant policy's exclusion of coverage for damage caused by "ground water" applied in this case. We conclude that "ground water" does not include rain water that travels directly from a roof into the channel created by a window well and then enters a basement. However, we conclude that the trial court did

_____

[*] Former Justice specially assigned to the Superior Court.

not err in determining that the policy's "negligent work exclusion" precluded coverage. We therefore affirm.

For purposes of this appeal, the facts of the case are undisputed. Ridgewood procured an "all risk" insurance policy from Millers to cover a residential rental property ("the Property"). The policy covered water damage generally, but excluded water damage caused by, among others, "flood, surface water, waves …, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind." Furthermore, the policy excluded damage arising from faulty, inadequate, or defective maintenance. However, the policy explicitly covered damages caused by faulty, inadequate, or defective maintenance, so long as those damages were otherwise covered by the policy. The policy was in effect at all times relevant to this appeal.

In March 2014, the Property suffered water damage to its basement and the equipment it contained. Neither party disputes that the water entered the basement during a rain storm, and that water traveled from the roof of the Property to a window well, and from the window well into the basement. Millers denied coverage under the policy, citing to the surface water and negligent work exclusions.

Ridgewood filed suit, asserting claims for breach of contract and bad faith. After discovery, Millers filed a motion for summary judgment, arguing that, as a matter of law, Ridgewood's claim was not covered under the

policy. The trial court agreed with Millers, and granted the motion for summary judgment in a terse, two page order. This timely appeal followed.

We review a challenge to the entry of summary judgment as follows.

[We] may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*E.R. Linde Const. Corp. v. Goodwin*, 68 A.3d 346, 349 (Pa. Super. 2013) (citations omitted).

Here, the facts are undisputed. The only questions before us concern the application of the policy's exclusions to the facts of the case. "The interpretation of an insurance policy is a question of law for the court." *Continental Casualty Co. v. Pro Machine*, 916 A.2d 1111, 1118 (Pa. Super. 2007) (citation omitted). Our goal in interpreting the language of an insurance policy is to "ascertain the intent of the parties as manifested by the language of the written instrument." *Kane v. State Farm Fire and*

*Casualty Co.*, 841 A.2d 1038, 1042 (Pa. Super. 2003). (citation omitted). "The polestar of our inquiry is the language of the insurance policy." *Continental Casualty Co.,* 916 A.2d at 1118 (citation omitted). This Court's function in analyzing an insurance policy is to construe words of common usage in their natural, plain, and ordinary sense. *See id*.

"In an action arising under an insurance policy, our courts have established a general rule that it is a necessary prerequisite … for the insured to show a claim is within the coverage provided by the policy." *McEwing v. Lititz Mutual Insurance Co.*, 77 A.3d 639, 646 (Pa. Super. 2013) (citation and internal quotation marks omitted). In contrast, where denial of coverage under the policy is based upon the application of a policy exclusion, "the insurer has asserted an affirmative defense, and accordingly, bears the burden of proving such defense." *Id*. (citation omitted).

Millers asserted in its motion for summary judgment that "the state of disrepair from the failure to maintain the roof, gutters and downspouts allowed rainwater and melting snow to overflow the debris clogged gutter and to flow into the air well and enter the basement." Motion for Summary Judgment, 2/2/16, at ¶ 13. Ridgewood's response admitted paragraph 13, and noted that "Millers' own expert, Pablo Ross, P.E. conceded the water never hit the ground. He further acknowledged that the water flowed directly from the roof, through the air well and into the basement." Plaintiff's

Response in Opposition to Defendant's Motion for Summary Judgment, 3/2/16, at ¶ 13.

To determine whether these circumstances were properly excluded from coverage under the policy, we must first define the term "surface water." This Court has long held that the term is "commonly understood to be waters on the surface of the ground, usually created by rain or snow, which are of a casual or vagrant character, following no definite course and having no substantial or permanent existence." *Richman v. Home Insurance Company of New York*, 94 A.2d 164, 166 (Pa. Super. 1953). Courts of other states are in substantial agreement with this definition. *See, e.g., Smith v. Union Automobile Indemnity Company*, 752 N.E.2d 1261, 1267 (Ill. App. 2001). However, this definition does not resolve the controversy before us.

The *Richman* definition can be argued to support exclusion in this case, as the water was created by rain and melting snow, that had a vagrant character and had no permanent existence. In contrast, the *Richman* definition can arguably support the opposite conclusion, as the water was never on the surface of the ground, but rather flowed directly from the roof into an artificial channel, the window well, that concentrated and channeled the flow of the water into the basement.

Nor does any other Pennsylvania precedent resolve this issue. We therefore will turn to foreign, non-binding precedent to guide our decision.

Millers correctly argues that the mere fact that the water travels over artificial surfaces is not legally sufficient to alter its status as "surface water." *See, e.g.*, *Boazova v. Safety Insurance Company*, 968 N.E.2d 385 (Mass. 2012) (water from rain and melting snow that travelled over a concrete patio was "surface water"); *Crocker v. American National General Insurance Company*, 211 S.W.3d 928, 936 (Ct. App. Tex. 2007) ("[O]rdinary meaning of the words 'surface water' … reasonably can include rainwater that has collected on the surface of their patio."); *Cameron v. USAA Property & Casualty Insurance Company*, 733 A.2d 965, 969-971 (D.C. 1999) (melting snow on outdoor patio that flowed down stairs and into basement was "surface water"). However, it is equally true that artificial channels that divert and concentrate the flow of surface water do have the ability to convert "surface water" into something else. *See Heller v. Fire Insurance Exchange, A Division of Farmers Insurance Group*, 800 P.2d 1006, 1009 (Col. 1990) (finding that surface water that was concentrated and redirected due to artificial channel was no longer surface water).

We conclude that the undisputed facts of this case are closer to *Heller* than to *Boazova*, *Crocker*, or *Cameron*. The water in this case never reached the ground, or reached it only in the form of the window well, an artificial channel that diverted and concentrated its flow into the basement of the Property. Under these circumstances, we conclude that the water which

caused the damage was not "surface water," and therefore the trial court erred in so concluding.

Next, we must determine whether the trial court's alternative basis for its decision justified the grant of summary judgment. The trial court also determined that the claim was excluded by action of the negligent work exclusion of the policy. The negligent work exclusion provides that the policy does not cover

> loss or damage caused by or resulting from any of the following Paragraphs a. through c. But, if an excluded cause of loss that is listed in Paragraphs a. through c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.
>
> …
>
> c.     Negligent Work
>
>        Faulty, inadequate or defective:
>
>        …
>
>        (4) Maintenance.

Millers Capital Businessowners Policy, effective 8/6/13, at 15.

In its brief, Ridgewood does not provide any authority to assist in interpreting this clause. Similarly, Millers concedes that there is no binding authority. **See** Appellee's Brief, at 23. This is important, because a close reading of the above quoted provision leads us to conclude that it contains a facial ambiguity.

The provision in question is included as an exclusion under the policy. This is relatively straightforward, in that courts have interpreted exclusionary language in insurance policies for decades. In this case, the exclusion would preclude coverage for a loss "caused by or resulting from" negligent maintenance.

However, this provision also contains an exception to the exclusion. "But, if an excluded cause of loss … results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss." Again, this policy is concededly an "all-risks" policy, that covers all losses except those that are explicitly excluded by the policy. Thus, the exception states that if negligent maintenance causes an otherwise covered cause of loss, the exclusion does not apply.

This exception, given its ordinary meaning, would swallow the exclusion whole and render it meaningless, pursuant to the following logic. All losses are covered except those explicitly excluded. Losses from negligent maintenance are explicitly excluded, except if the negligent maintenance causes a loss that isn't otherwise excluded. Thus, the negligent maintenance exclusion would not act to exclude coverage for any loss that is not already excluded. This is the interpretation pressed by Ridgewood.

In contrast, Millers refers to this provision as an "ensuing loss" clause, and cites to a secondary source for the proposition that for the exception to the exclusion to apply, "there must be a distinct, new, covered peril."

Appellee's Brief, at 22. We do not find this standard to be helpful in clarifying the intent of the provision, given that a distinct, new, covered peril would be covered under an all-risk policy by definition. Thus, it does not resolve the ambiguity of the provision.

Millers cites to **Platek v. Town of Hamburg**, 24 N.Y.3d 688, 695 (N.Y. 2015), which provides, in *dicta*, that ensuing loss provisions arose from the 1906 San Francisco earthquake. **Platek** posits that after the San Francisco earthquake, insurance companies denied coverage for damages from fires that arose because of the earthquake pursuant to earthquake exclusions in their policies. **See id**., (citing James S. Harrington, *Lessons of the San Francisco Earthquake of 1906: Understanding Ensuing Loss in Property Insurance*, 37 The Brief No.4 28 Summer 2008). The California legislature reacted by enacting statutes requiring coverage for fires resulting from earthquakes. **See id**. In response to these statutes and similar statutes in other states, insurers crafted the ensuing loss exceptions, such as the provision under consideration in this appeal. **See id**.

Millers provides an example of the application of the ensuing loss exception which utilizes the facts of this case, but inserts a fire caused by an electrical short when the rain water enters the basement. Presumably, Millers would find damage caused by the fire, as opposed to the damage caused directly by the floodwaters themselves, covered under the policy.

Indeed, this is the position arguably taken by the Sixth Circuit in interpreting an ensuing loss clause that modified an exclusion for faulty construction.

> The "ensuing loss" clause also fairly could be construed as a causation-in-fact-breaking link in coverage exclusions, establishing that independent, non-foreseeable losses caused by faulty construction are covered.
>
> While the faulty workmanship exclusion applies to loss or damage "caused by or resulting from" the construction defect, the "ensuing loss" provision clarifies that the insurance company could not use the exclusion to avoid coverage for losses remotely traceable to an excluded cause. … If, say, the water leak in this case had shorted an electrical socket and started a fire, any fire damage would be covered in light of the "ensuing loss" clause. Thus, if, on the one hand, the damage came "naturally and continuously" from the faulty workmanship, "unbroken by any new, independent cause," the exclusion applies and the ensuing loss provision does not. *But if, on the other hand, the later-in-time loss flows from a non-foreseeable and non-excluded cause, it is covered*. *In this instance, because defective wall construction naturally and foreseeably leads to water infiltration, the language of the exclusion, not the exception to the exclusion, ought to apply*.

*TMW Enterprises, Inc. v. Federal Insurance Company*, 619 F.3d 574, 579 (6th Cir. 2010) (citations omitted) (emphasis supplied).

Thus, the Sixth Circuit focused on foreseeability as the defining purpose of the ensuing loss clause. Those damages which naturally and foreseeably arise from the excluded cause are excluded. In contrast, non-foreseeable losses qualify for the exception to the exclusion and are covered under the policy.

We believe that Sixth Circuit's interpretation of an ensuing loss clause is the correct one. Foreseeability is the lynchpin of the analysis. Thus, in this case, Ridgewood's loss is excluded from coverage if it was a natural, foreseeable loss arising from deficient maintenance. On the other hand, it is covered, pursuant to the ensuing loss exception, if it was non-foreseeable.

As noted previously, it is undisputed that the roof, gutters and downspouts of the Property were rotting due to disrepair. Furthermore, it is undisputed that this state of disrepair "allowed rainwater and melting snow to overflow the debris-clogged gutter and to flow into the air well and enter the basement" of the Property. Similar to the Sixth Circuit, we conclude that this water infiltration damage is a natural and foreseeable loss arising from a rotted roof and clogged gutter and downspout system. We therefore determine that the trial court did not err as a matter of law in granting summary judgment to Millers.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/28/2017</u>

- 11 -